**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Leonard LOWENSTEIN, Defendant–Appellant.**

Nos. 96–1505, 96–1956.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 3, 1997.

Decided Feb. 25, 1997.

Patricia G. Blake (argued and briefed) and Rafael M. Gonzalez, Office of the U.S. Attorney, Detroit, MI, for Plaintiff–Appellee.

David C. Tholen (argued and briefed), Federal Public Defenders Office, Detroit, MI, for Defendant–Appellant.

Before: KENNEDY, NELSON, and GODBOLD*, Circuit Judges.

KENNEDY, Circuit Judge.

In these consolidated appeals, defendant appeals the District Court's (1) modification of the terms of his supervised release, and (2) subsequent revocation of his supervised release. Defendant argues that the District Court could not modify the terms of his supervised release without first finding that he had violated one of those terms. Defendant further argues that the evidence does not support either the violation finding upon which the modification is based, or the violation finding upon which the subsequent revocation is based. For the following reasons, we AFFIRM the modification and subsequent revocation of defendant's supervised release.

From March through October, 1991, defendant telephoned death threats to a state assistant attorney general who had been attempting to collect inheritance taxes on the estate of the father of defendant. Based upon this conduct, a jury convicted defendant on June 10, 1992 of one count of transmitting a threatening communication, in violation of 18 U.S.C. § 875(c). The District Court sentenced defendant to forty-eight months of incarceration and a three-year term of supervised release. Defendant unsuccessfully appealed his conviction and sentence. *See United States v. Lowenstein,* 1 F.3d 452 (6th Cir.1993).

On April 28, 1995, defendant began to serve his term of supervised release. On January 15, 1996, the United States Department of Probation ("Probation Department") granted defendant permission to travel to Florida between January 20, 1996 and January 28, 1996. On January 18, 1996, however,

---

* The Honorable John C. Godbold, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

the Probation Department petitioned the District Court to issue a summons; the petition alleged that defendant had violated the terms of his supervised release on August 10, 1995 by leaving the judicial district without permission and travelling to Miami, Florida. The District Court issued the requested summons on February 20, 1996.

The District Court held a violation hearing on March 27, 1996. Through counsel, defendant filed a motion to dismiss the petition to hold him in violation, arguing that the government's delay in bringing the petition and its grant of permission to defendant to travel to Florida in January, 1996 estopped it from bringing the violation charge. Defendant neither admitted nor denied in his motion that he travelled to Florida in August, 1995.

At the violation hearing, counsel for defendant reasserted the estoppel argument, and the government and the Probation Officer argued that defendant had violated the terms of his supervised release by leaving the judicial district without permission in August, 1995. The District Court stated that it was much less disturbed by the allegation that defendant had travelled without permission than by a letter which it had received from the Probation Department and which defendant had reviewed. This letter described threatening phone calls made by defendant in November, 1995 to the assistant attorney general involved in the earlier conviction and a state court judge.

The District Court denied the motion to dismiss and found that defendant in fact had violated the terms of his supervised release by leaving the judicial district without permission. It did not state on what evidence it relied. Rather than revoking defendant's supervised release, however, the District Court modified its terms by prohibiting defendant from making "harassing or otherwise inappropriate contact with, or telephone calls to, any judge, attorney, or other person." Defendant thereafter filed a timely notice of appeal of the modification.

On June 27, 1996, the Probation Department petitioned the District Court to issue another summons, alleging that defendant had violated the amended term of his supervised release on May 9, 1995 by placing a harassing phone call to Jill Daly, an attorney for the Oakland County Probate Court.

A hearing on the summons was held on July 15, 1996. Because Daly, the witness to the harassing call, was not present, the hearing was rescheduled to July 17, 1996.

At the July 17, 1996 hearing, Daly testified that she had become acquainted with defendant when she had worked as an attorney in the Probate Estates Division of Oakland County Probate Court. Daly confirmed that defendant had called her on May 9, 1996 and that she had transcribed their conversation. The District Court read into the record her transcription, which in part stated the following:

> [Defendant] claims his daughter took his money while he was in prison and that she will pay for that. He further says several other people will pay. He says this is not a threat, this is a promise. Included in his threat list are, of course, D——K——, that low life s—-of-a-b—— tax collecting piece of s——, [state court judges] F.X. O'Brien [and] Hilda Gage, [Magistrate Judge] Paul Komives and [District Court Judge] Horace Gilmore, all with varying degrees of obscenities. He had kind words for Hugh Dean. He is a good man.

Daly testified that after she notified the Probation Department of this call, her previously cordial relationship with defendant changed. Specifically, defendant left Daly a message on her voicemail on May 24, 1996. Daly confirmed that she prepared the following transcription of that message:

> Thanks for the good advice you gave me about, you know, forgetting everything and going on with it. Ah, I'm sure going to try it. I wonder, I wonder how you'd handle it if you got f—— over for no reason and had all your money cleaned out, you know, by forgeries with the help of the bank and came out and you were destitute and in the streets. Hey, thanks for the good advice, Jill, and ah, I'm going to follow it. Call me if you have anything you want to add. I can be reached at 313-——-——. Enjoy your lunch. Enjoy your status and position. Ah, and Ah, God forbid you should ever have to walk in somebody else's shoes

cause your feet might hurt. They might get hurt. But thanks for the good advice, Jill. So long.

Likewise, Daly confirmed that defendant left another message on her voicemail on June 28, 1996. This message stated:

Jill, this is Lenny and I am truly disappointed in you as a human being. I truly am. And I want you to share some of the responsibility for my suicide if I do tend, if I do commit suicide. You are a no good piece of s____ c____-sucker, Jill, and ah, that is the best, basest thing I can say about you. So long.

Daly had recorded this final message on tape, and it was played at the hearing.

During cross-examination, Daly stated that neither the May 9, 1996 conversation nor the May 24, 1996 voicemail message contained a threat directed at her. Daly identified the caller as defendant, with whom she had dealt many times between the late 1980's and 1991. She was able to identify him from the use of a nickname he had used previously. Daly also testified that after she had realized during the May 9, 1996 conversation that she was speaking to defendant, she said "Oh, it's Lenny," and the caller agreed. Defendant neither produced witnesses nor testified on his own behalf at the hearing.

The District Court found that defendant had violated the amended term of his supervised release by placing harassing calls to Daly on May 9, May 24, and June 28, 1996. Accordingly, the District Court revoked his supervised release and imposed a sentence of ten months of incarceration. Defendant filed another timely notice of appeal of the revocation and sentence.

### A. March, 1996 modification of terms

■ Defendant asserts that the doctrine of estoppel barred the government from petitioning the District Court in January, 1996 to revoke or modify the terms of his supervised release based upon his alleged trip to Florida in August, 1995. Specifically, he argues that "the Probation Department's conduct in not timely reporting the violation to the district court and subsequently granting written permission for future travel constituted 'retroac-

tive permission' to travel outside of the jurisdiction in August, 1995." Defendant cites *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), and *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959), for the proposition that the defense of entrapment by estoppel bars the government from holding an individual criminally responsible for conduct which government officials explicitly have approved.

This assertion is without merit. Both *Cox* and *Raley* involved facts in which the government had told the defendants in those cases that a certain activity was acceptable *before* they undertook it. *See Cox*, 379 U.S. at 571, 85 S.Ct. at 484 (city officials told defendant he could demonstrate near a courthouse before he did so); *Raley*, 360 U.S. at 426, 438–39, 79 S.Ct. at 1260, 1266–67 (legislators told witnesses that they could rely on privilege against self-incrimination; witnesses later received convictions for contempt for having invoked that privilege); *see also United States v. Levin*, 973 F.2d 463, 468 (6th Cir.1992)(entrapment by estoppel applies only when defendant reasonably relied upon a pronouncement by government that the charged criminal act was legal). The government, however, never suggested to defendant that he could travel to Florida in August, 1995.

■ Defendant also argues that there was insufficient evidence to support the finding by the District Court that he violated the terms of his release by leaving the district without permission. We agree with defendant that the record contains no testimony or documentary evidence that defendant travelled to Florida in August, 1995. In making its factual determination, the District Court relied solely upon a hearsay statement contained in the petition compiled by the Probation Officer. Although a finding that a defendant violated the terms of his supervised release may rest upon reliable hearsay evidence, *see* FED.R.EVID. 1101(d)(3); *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir.1991), the petition compiled by the Probation Officer merely asserts, without further detail or explanation, that defendant left the judicial district without permission on August 10, 1995. The petition does not mention the

factual basis for the belief of the Probation Officer. Such an accusation, standing alone, lacks the indicia of reliability which would allow it to justify a finding that defendant actually left the district without permission. *See Stephenson*, 928 F.2d at 732–33 (district court abused its discretion holding that defendant violated his supervised release where evidence did not permit finding that defendant committed charged assault and neither order nor judge's statements referred to the evidence upon which the court relied); *see also United States v. Silverman*, 976 F.2d 1502, 1512–13 (6th Cir.1992)(en banc) (during sentencing, district court may consider hearsay evidence only if it has "some minimal indicium of reliability" to support its accuracy; mere allegation in indictment will not suffice).

■ As an alternative basis for affirmance, however, the government argues that the District Court did not have to find initially that defendant had violated a term of his supervised release before modifying the terms of that release. The statute governing modification of supervised release conditions, 18 U.S.C. § 3583(e)(2), provides in pertinent part that a district court

> may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision[.]

In contrast, the statute which governs the revocation of supervised release provides that revocation is possible only when

> the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, *finds by a preponderance of the evidence that the defendant violated a condition of supervised release* . . . .

*See* 18 U.S.C. § 3583(e)(3)(emphasis added). Moreover, the Federal Rule of Criminal Procedure referred to in § 3583(e)(2), Rule 32.1(b), imposes only the following procedural requirements:

**(b) Modification of Probation or Supervised Release.** A hearing and assistance of counsel are required before the terms or conditions of probation or supervised release can be modified, unless the relief to be granted to the person on probation or supervised release upon the person's request or the court's own motion is favorable to the person, and the attorney for the government, after having been given notice of the proposed relief and a reasonable opportunity to object, has not objected. An extension of the term of probation or supervised release is not favorable to the person for the purposes of this rule.

The literal language of Rule 32.1(b) therefore impose no requirement that a court modifying the conditions of supervised release first find that the defendant has violated a condition of his supervised release.

Defendant responds that the first sentence of 18 U.S.C. § 3583(e) generally directs courts deciding whether to terminate, extend, modify, reduce or revoke terms of supervised release to consider factors detailed in various other statutory sections, including 18 U.S.C. § 3553(a)(4), which in turn refers to the policy statements issued by the United States Sentencing Commission regarding the violation of probation or supervised release. *See* 18 U.S.C. §§ 3553(a)(4)(B); 3583(e). The policy guideline applicable to the revocation of probation or supervised release, United States Sentencing Commission Guideline ("U.S.S.G.") § 7B1.3(a)(2), in turn states that modification is a possible penalty for a Grade C supervised release violation, such as the violation here at issue. He argues that if modification is an appropriate penalty for a violation, it cannot be imposed absent a finding of a violation.

Defendant's reliance upon U.S.S.G. § 7B1.3(a)(2) is misplaced. The policy statement does not provide that a violation is a necessary prerequisite to modification; rather, it merely states that a violation may justify a modification. Further, the policy statement is only one of many factors which a sentencing court may consider when it is deciding whether to pursue one of the sever-

al options governed by 18 U.S.C. § 3583(e). Moreover, even if § 7B1.3(a)(2) did provide that modification of supervised release requires a finding of a supervised release violation, the policy statements in Chapter 7 of the Sentencing Guidelines are not mandatory requirements. *See United States v. West*, 59 F.3d 32, 35–36 (6th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 486, 133 L.Ed.2d 413 (1995).

Accordingly, the provisions of § 3583(e)(2) and Rule 32.1(b) demonstrate that a court can modify the conditions of a defendant's supervised release regardless of whether the defendant has violated his existing conditions. Further, the fact that § 3583(e)(2) and Rule 32.1(b) are intended to allow courts to respond flexibly to unforeseen changes in the circumstances of a defendant[1] likewise indicates that a violation of an existing supervised release term does not have to precede a modification. For example, if a defendant begins contacting the victim of the crime for which he was convicted during his period of supervised release, it could be reasonable for the sentencing court to impose a new prohibition against contacting the victim, even though the defendant previously had been honoring every term of his supervised release. Moreover, allowing modification only when a defendant has committed an existing violation would create an incentive, onerous to both law enforcement officials and defendants, to make the initial terms of a defendant's supervised release as comprehensive as possible. So long as the modifications meet the standard required of initial terms of supervised release, i.e., that they are reasonably related to the goals of rehabilitation of the defendant and the protection of the public, *see United States v. Berridge*, 74 F.3d 113, 118 (6th Cir.1996), they will be upheld.

### B. July, 1996 revocation

Defendant also argues that sufficient evidence failed to support the decision of the District Court at the July 17, 1996 hearing to revoke his supervised release and sentence him to ten months of incarceration because he had violated the amended condition of his supervised release by placing harassing phone calls to Jill Daly on May 9, May 24, and June 28, 1996.

■ A sentencing court may revoke a term of supervised release and incarcerate the defendant when "the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release." *See* 18 U.S.C. § 3583(e)(3). The same procedural requirements applicable to hearings regarding revocation of parole apply to hearings regarding revocation of supervised release. *Stephenson*, 928 F.2d at 732. Those requirements are:

(a) written notice of the claimed violation of parole; (b) disclosure to the parolee [individual on supervised release] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* (emphasis deleted)(quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)).[2] In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release. *See id.* at 733. Once this finding is made, whether defendant's probation or supervised release

---

1. *See* FED.R.CRIM.P. 32.1(b) advisory committee's note, which explains that "[p]robation conditions should be subject to modification, for the sentencing court must be able to respond to changes in the probationer's circumstances as well as new ideas and methods of rehabilitation."

2. FED.R.CRIM.P. 32.1(a)(2) reiterates the first four of these six requirements and further requires notice of the right to be represented by counsel.

should be revoked is reviewed for an abuse of discretion. *See id.* at 731–32.

Defendant argues that, "while Ms. Daly's testimony may have been sufficient to establish the existence of the charged May 9, 1996 telephone call, her testimony does not establish that the call was a 'harassing' telephone call." The District Court, however, did not err in concluding that defendant had made "harassing" calls which violated the amended condition of his supervised release. Although Daly testified upon cross-examination that the May 9, 1996 call and the May 24, 1996 voicemail message contained no threats directed at her, they did contain obscenities and displayed marked hostility, the May 24, 1996 message expressing hostility to Daly in particular. Consequently, even if the calls did not express actual threats of violence directed at Daly herself, the District Court did not err in reaching that conclusion.

Defendant never discusses whether the May 24 and June 28, 1996 messages could constitute violations of his amended supervised release condition. He possibly assumes that the messages are not at issue because the petition did not refer to them specifically. The government filed its petition, however, before defendant left the June 28, 1996 message. Further, defendant received notice that these two messages were at issue during the discontinued July 15, 1996 hearing, at the latest, when government counsel discussed the memo prepared by Daly regarding these messages. Defendant also had the opportunity during the July 17, 1996 hearing to cross-examine Daly regarding the two messages and the District Court specifically found that they violated the amended supervised release term. The District Court therefore properly based the revocation of defendant's supervised release upon all three harassing calls.

Accordingly, we AFFIRM the modification and subsequent revocation of defendant's supervised release.