**UNITED STATES of America,**
**Plaintiff–Appellee,**

· v.

**Jerome STRAGER, Defendant–Appellant.**

No. 98–3010.

United States Court of Appeals,
Sixth Circuit.

Submitted Sept. 22, 1998.

Decided Dec. 23, 1998.

Spiros P. Cocoves (briefed), Toledo, Ohio, for Defendant–Appellant.

David O. Bauer, Asst. U.S. Atty. (briefed), Toledo, Ohio, for Plaintiff–Appellee.

Before: MERRITT, JONES, and SILER, Circuit Judges.

MERRITT, J., delivered the opinion of the court, in which NATHANIEL R. JONES, J., joined. SILER, J. (p. 923), delivered a separate dissenting opinion.

## OPINION

MERRITT, Circuit Judge.

The defendant appeals the revocation of his probation because of two recorded telephone calls to his probation officer and the imposition of a 24–month sentence at resentencing. The question is whether the two phone calls form a sufficient basis to revoke probation.

The facts are basically undisputed. After pleading guilty to bank fraud violations pursuant to 18 U.S.C. § 1028(a)(5) and (a)(6), defendant Jerome Strager was sentenced in Toledo in the Northern District of Ohio in August 1997 to one year probation with "special conditions." The special condition was 92 days of home confinement with electronic monitoring to be served at his mother's house in Detroit, which is in a different judicial district. Supervision of his case was transferred from the Toledo to the Detroit probation office.

Defendant's presentence investigation report states that defendant does not show signs of a major mental illness, but it does indicate what is described as a "personality disorder." Specifically, it was reported that defendant presented "prominent histrionic and paranoid features" and was a "good candidate" for continued mental health therapy.

In September 1997, Howard Jacobs, stationed in Detroit, was assigned as defendant's probation officer. Probation Officer Jacobs and defendant met briefly in late September 1997, but they had their first actual meeting on October 10, 1997 to go over the terms of defendant's probation. The probation officer explained the terms as he understood them to apply in the Eastern District of Michigan. At the October 10 meeting, the two men chose October 28, 1997, as the day to install the electronic monitoring equipment.

Probation Officer Jacobs was unable to install the equipment on the designated day and called defendant at the end of the day to tell him he would be by the next day, October 29, to install the equipment. When Jacobs arrived at his office on October 29, he found two messages from defendant from the previous day, as follows:

I got a cellular phone. When I go out for three, four, five hours day to take care of my sports business, you have my cellular number, and you can call me and know exactly where I am at.

Also, there is another little problem. I am filing motions to the court because I have no attorney any more. This attorney is gone, I don't know, and I am going to sue you people for a few little things.

And under federal law, even in prison, even if you are locked down all day, you are entitled to three, four hours a week—a day I mean, a day, every day in the law library.

So I am going to have to go down to Wayne State University law library. It is a public law library on Woodward Avenue daily, so I can do my law research. And we are going to see about cruel and unusual punishment, keep people locked down all the time and double and triple standards, and what's going on here. Take you best shot because I will have you guys in court, and we will see what's going to happen.

The second call went as follows:

Hey, I just must have missed you by about five minutes. Just a couple other things so you know. I read the prisoner rights manual. Since I am a prisoner, every prisoner in the federal system is entitled to one hour of exercise every day outside. That's everybody, solitary confinement and everything.

Also, every prisoner is allowed access to a United States law library up to federal standards. The only federal law library up to federal standards—because I am fighting this case. I am going to sue you people—is on Woodward Avenue, 5201, main library, and I will be going there every day.

I will call you every day and ask you for permission. I will record it and when you turn me down, well will [sic] see what happens in court because your old buddies, they will sell you right out. I am hoping we can come in here. We don't have to go through this, and I can get out to take care of my business. I will be in here until 2:00 o'clock.

Probation Officer Jacobs described the tone of the messages as "nasty" and testified that he was afraid for his personal safety after listening to the messages. Trans. of Dec. 9, 1997 hearing at 9, 12.

After listening to these two messages, Jacobs advised defendant by phone that some issues regarding defendant's home confinement needed clarification and that the monitoring equipment would not be installed that day. Jacobs then called the probation office in Toledo to discuss what Jacobs interpreted as "demands" made by defendant regarding defendant's home confinement and to discuss what should be done. Jacobs sent copies of the voice messages to the Toledo office.

Based on these two phone messages and his knowledge of defendant's "mental instability" documented in defendant's probation file, Jacobs did not try to install the electronic monitoring system on October 29. He then decided not to install the electronic system at all. Although it is not entirely clear from the record what role the Toledo office played in this decision, it appears that the Toledo office concurred in this decision. There was no contact between the probation office and defendant for almost a month. Then, on November 25, defendant came to the office for his regularly scheduled appointment. Because defendant was ill, he was told to go home. Jacobs did not attempt to discuss the situation concerning the electronic monitoring with him and the appointment was simply rescheduled for December 2. But before that meeting could take place, the Toledo probation officer filed a probation violation petition that was signed by the district judge and marked filed on November 26, 1997, the day after defendant appeared without incident for his scheduled appointment with Jacobs.

Defendant appeared for the December 2 appointment as scheduled. He gave a

urine specimen and signed a form describing the terms and conditions of his probation. Jacobs testified that defendant was in compliance with all the terms of his probation between October 29 and December 2. Defendant had continued living at his mother's house and he had sent in written reports as required.

A probation revocation hearing was scheduled for December 9, 1997 and defendant was notified. The defendant did not testify at the revocation hearing. Jacobs testified at the revocation hearing that it was he, not defendant, who was "unwilling" to implement the home confinement. Trans. of Dec. 9, 1997 hearing at 15. Jacobs testified that defendant was home on October 28 awaiting the arrival of the probation officer. Defendant was apparently also home on October 29 expecting him. Defendant complied with all other conditions of his probation, before and after the recorded phone calls. At the conclusion of the hearing, the district court revoked defendant's probation and sentenced him to 24 months in prison.

The defendant argues that the district court erred in revoking his probation on the basis of the two phone calls because the record is clear that he never refused to comply with any of the conditions of probation. The district court held that the two telephone messages were sufficient evidence to support the conclusion that the defendant would not comply with the electronic monitoring and was therefore in violation of the terms of his probation.

Although we do not condone defendant's behavior in threatening to research the law and sue his probation officer, we do not see that defendant's conduct rises to the level of violating a condition of probation. There is no threat of violence, no threat of noncompliance with any court order nor any refusal to live with the electronic monitoring system. The defendant appeared for all meetings with Jacobs. There is nothing in the record to indicate he would not comply with any condition of probation. Furthermore, defendant was not given any specific notice or warning in writing or orally that he was in violation of any specific condition of probation or that he needed to modify any specific behavior.

The District Court's finding that the defendant would not comply with electronic monitoring was not based on evidence in the record and therefore cannot be allowed to stand. Accordingly, the revocation order is reversed.

SILER, Circuit Judge, dissenting.

I respectfully dissent from the majority opinion. It was up to the sentencing court to find by a preponderance of the evidence that Strager violated a condition of his probation. *See United States v. Lowenstein*, 108 F.3d 80, 85 (6th Cir.1997). We review the revocation for an abuse of discretion. *Id.* Although the majority indicates that the defendant was not given any notice that he was in violation of the conditions of his probation, the record indicates that the probation officer filed a petition for a summons to be issued for Strager to appear before the court for a violation hearing. Subsequently, at the hearing, the court asked the defendant whether he received a copy of the supplemental violation report, and counsel indicated that it had been received.

The defendant had ample opportunity at his probation revocation hearing to advise the court that he would comply with the electronic monitoring condition of his probation, but he did not. He put on no evidence.

This court in *Lowenstein* found that it was not an abuse of discretion for the district court to revoke the defendant's supervised release for making harassing phone calls to a government attorney. Therefore, I would also find that there was no abuse of discretion here under the circumstances of this case.