**UNITED STATES of America** Plaintiff–Appellee,

v.

**Martin David STEPHENSON** Defendant–Appellant.

No. 90–6037.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 22, 1991.

Decided March 15, 1991.

Steven G. McKnight (argued), Office of the U.S. Atty., Chattanooga, Tenn., John W. Gill, Jr., U.S. Atty., Knoxville, Tenn., Curtis L. Collier and Gary Humble, Asst. U.S. Attys., Chattanooga, Tenn., for plaintiff-appellee.

John C. Cavett, Jr. (argued), Jahn & Jahn, Chattanooga, Tenn., for defendant-appellant.

Before MARTIN and KRUPANSKY, Circuit Judges, and LIVELY, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

On August 1, 1990, an order was entered by the district court revoking Martin David Stephenson's supervised release. The district court found two violations of the conditions for supervised release; it found (1) Stephenson committed an assault, and (2) he had not refrained from the excessive use of alcohol. Stephenson asserts that there is insufficient evidence for either violation, that the condition against "excessive use of alcohol" is unconstitutionally vague, and that the imposition of a twelve-month sentence was improper. We conclude his claim of insufficient evidence has merit and we remand for further proceedings consistent with this opinion.

Stephenson was convicted of violating 18 U.S.C. § 1001 on December 16, 1988. He was sentenced under the Federal Sentencing Guidelines to a term of three months and three days to be followed by a two-year period of supervised release. At the time of his sentencing, the court imposed many conditions upon his supervised release, including the conditions that he refrain from the "excessive use of alcohol" and that he "not commit another federal, state or local crime during the term of his supervision."

Stephenson was released from prison in 1989 and on July 5, 1990, his probation officer, Adela Tovar, filed a petition to revoke his supervised release. Tovar set out five reasons in the petition why Stephenson's supervised release should be revoked: Stephenson had been arrested for assault and battery; he had threatened members of his natural and adoptive family; he had remained unemployed; he had not refrained from the excessive use of alcohol; and he had not completed his community service required by the terms of the supervised release. The district court found that Stephenson had violated both the condition that he refrain from excessive use of alcohol and the condition that he not commit a crime; therefore, the court revoked the supervised release and ordered Stephenson into custody for a period of twelve months.

Stephenson raised a new claim in oral argument relating to the length of his sentence. We will address this claim first. He contends that the maximum sentence he should receive upon revocation of his supervised release is equal to the maximum allowable time in the guideline range for the original offense less the time he has already served. This argument is without merit.

Stephenson bases this claim on *United States v. Von Washington*, 915 F.2d 390 (8th Cir.1990), and *United States v. Smith*, 907 F.2d 133 (11th Cir.1990). In those cases, the defendants were not on supervised release but on probation and, therefore, their hearings were subject to the revocation rules set forth in 18 U.S.C. § 3565(a)(2). Both cases specifically rely on § 3565(a)(2) in limiting the term of resentencing to that term allowable for the original offense under the Guidelines. The district court in this case applied 18 U.S.C. § 3583(e). In contrast to the language of § 3565(a)(2), § 3583(e) does not limit the allowable term to the maximum available for the original offense. The plain language of § 3583(e) grants the court discretion to resentence the defendant for any period up to the whole period of supervised release with certain limiting exceptions. *See* 18 U.S.C. § 3583(e)(3).

The inherent differences between supervised release and probation necessitate this difference in structure. In probation, because the defendant will not have served time for his offense, the court may consider the guidelines range of the original offense as the possible incarceration period. In supervised release, however, the individual will have already served time, possibly the maximum allowed under the Guidelines. Connecting the resentencing period with the maximum period of incarceration allowed for the original of-

fense would undermine the system of supervised release. If the resentencing period was connected and the defendant had already served a substantial part or all of his allowable term under the Guidelines, his violation of a condition of supervised release would result in a tenuously short period of reincarceration, or no reincarceration at all. The possibility of reincarceration for violation of a condition of supervised release is a cornerstone of the sentencing structure. Accordingly, the lower court was correct in not limiting Stephenson's term at the revocation hearing to that allowable under the original offense less time already served.

Stephenson next asserts there was neither proof he committed an assault nor proof that he violated the condition against the excessive use of alcohol. 18 U.S.C. § 3585(3) requires the district court to find by a preponderance of the evidence that Stephenson had violated these conditions of his supervised release. Probation Officer Tovar, Stephenson, and his mother all testified at the revocation hearing concerning the alleged violations. However, the record is very scant on proof to support the finding of violations.

Regarding the condition that Stephenson not commit a crime, Tovar testified that Stephenson was arrested for assaulting his step-uncle, Glenn Edward Thomason. She added that Thomason sought the warrant and that the case was being deferred and would be dismissed at the end of the year so long as Stephenson did not get into "further trouble." Stephenson's testimony relevant to the assault went as follows:

> QUESTION: Now, the assault, you said you were going to press counter, thought about pressing a countersuit, so there's no question you were in a fight, right?
> STEPHENSON: I wouldn't say that. It was an argument, Mr. Humble, is what it was.
> QUESTION: Didn't it come to blows?
> STEPHENSON: I wouldn't even say it came to blows. There was some pushing in there. The thing was if in Tennessee law I was guilty of assault, then there's also some other parties guilty of assault.

No other evidence regarding the assault was offered.

With regard to Stephenson's excessive use of alcohol, Tovar testified that Stephenson told her he drank from six to twelve beers a night on the weekend. Stephenson's mother testified that he would only drink at home. She said she considered alcohol to be "medicine" for him and that Tovar had told her it was his "poison." Stephenson testified that he told Tovar he would drink about a twelve-pack on the weekends. He also testified that he had asked her to define "excessive use" for him and she replied that if he was going to drink, just drink at home to avoid arrest for public disturbance or driving under the influence.

At the conclusion of the revocation hearing, the court revoked Stephenson's supervised release, stating:

> [t]he court finds that there has been a violation of two conditions of the defendant's supervised release. First of all, the condition number one regarding the requirement that he not commit another federal, state or local crime. The court finds there was an assault, regardless of whether or not there was a conviction or regardless of whether or not the Sessions Court of Van Buren County found him guilty or not, the court finds that it did happen.
>
> The court finds, secondly, that the defendant, although apparently he's made some efforts, at least as far as treatment is concerned, he has still not refrained from excessive use of alcohol. Twelve packs of beer on a weekend, we could argue about that. I consider that ... to be excessive.

The court did not state at the hearing what evidence was relied on in reaching this conclusion. In the written order revoking Stephenson's supervised release, the court made no reference to the evidence relied on, the particular conditions which were violated, nor the reasons for revoking the release.

■ Our review of the district court's findings is limited to determining whether the court abused its discretion. In *Taylor*

*v. United States Parole Comm'n,* 734 F.2d 1152, 1195 (6th Cir.1984), we held revocation of parole is reviewed under an abuse of discretion standard. We can see no reason why this same standard should not apply to revocation of supervised release. We recognize the district court is allowed broad discretion in reaching the conclusion that a condition of supervised release has been violated; however, we have here a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.* (quoting *Balani v. Immigration and Naturalization Service,* 669 F.2d 1157, 1160 (6th Cir. 1982)). Thus, we conclude the court abused its discretion.

■ In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court held that, in order to satisfy the requirements of due process, a hearing must be offered before parole could be revoked. For the same reasons due process requires a hearing before revocation of parole, it must also be tendered before the revocation of supervised release.

> This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee [individual on supervised release] must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation.

*Id.* at 488, 92 S.Ct. at 2603. The Court set forth some of the minimal procedural requirements for the hearings:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee [individual on supervised release] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral

and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) *a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.*

*Id.* at 489, 92 S.Ct. at 2604 (emphasis added).

■ Notwithstanding these criteria, the revocation hearings are more flexible than a criminal trial. *Id.* at 489, 92 S.Ct. at 2604. The judge may consider hearsay if it is proven to be reliable. *Taylor,* 734 F.2d at 1155. He may also find that the defendant has violated a condition of his supervised release based on his "own finding of new criminal conduct even if (1) the [defendant] is later acquitted of all charges arising from the same conduct, (2) all criminal charges arising from the same conduct are dismissed prior to trial, or (3) the [defendant's] criminal conviction is subsequently overturned." *Id.* (citations omitted).

Like the court in *Taylor,* our concern is not with the nature of evidence considered but with the "paucity of reliable evidence...." *Id.* In *Taylor,* this court concluded the district court had abused its discretion because it had found criminal conduct based totally upon a probation officer's summary of an arrest report. *Id.* at 1155–56.

■ The only reliable evidence in this case regarding the assault allegedly committed by Stephenson was the meager testimony of the probation officer and Stephenson's admission that "[t]here was some pushing in there." Tenn.Code Ann. § 39–13–101 sets forth that an assault is committed when one "intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Although Stephenson was arrested for assault, his case never went to trial. The probation officer's testimony includes very few facts concerning the alleged assault. Neither Stephenson's stepuncle, the alleged victim, nor the arresting officer submitted letters, affidavits, or testified at the revocation hearing. Nothing in the record establishes that the contact

involved would be extremely offensive or provocative to a reasonable person.

■ Likewise, the lower court's determination that Stephenson had not refrained from an "excessive use of alcohol" is supported by little reliable evidence. Of course, the determination of whether one has excessively used alcohol will vary with the facts and circumstances of each particular case. What may not be excessive for one is excessive for another, and the lower court has broad discretion in deciding when the line of excess has been crossed. In this case that determination was made based totally upon Stephenson's apparently routine, casual consumption of a twelve-pack of beer in his home over the course of a weekend.

The court acknowledged Stephenson had been receiving counseling. Stephenson's mother testified that he always drank at home. The only testimony on the effects that alcohol has on Stephenson was his mother's statement that she considered it his "medicine" and Probation Officer Tovar considered it his "poison." How much alcohol is consumed and when it is consumed are certainly necessary questions to ask. If the frequency and the amounts are substantial, no other facts may be needed to determine excessive use. However, without more information about the effect of alcohol upon the defendant or information about the defendant from which logical inferences can be made, the routine consumption of twelve beers in one's own home over the course of a weekend does not as a matter of law constitute excessive use. Here the record is barren of supporting evidence that Stephenson violated his conditional release by excessively using alcohol.

■ Moreover, among the minimum requirements of due process is a "written statement by the factfinder[ ] as to the evidence relied on and the reasons for revoking [supervised release]." *Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604. The lower court expressed at the revocation hearing the conditions of supervised release it found Stephenson had violated. The court also noted the violation of conditions in its written order, but it did not

satisfy the minimum requirements set out in *Morrissey* in order to revoke Stephenson's supervised release, the lower court is required to express in writing the evidence it has relied on and the reasons for the revocation. *Id.* The record does not contain such a writing.

We acknowledge and appreciate the discretion of the trial judge in his role as factfinder for the supervised release revocation hearing. Nonetheless, the judge is required to find by a preponderance of the evidence that a condition has been violated before revocation can occur. If in our review we determine with a definite and firm conviction that the lower court committed error in reaching that conclusion, we must find that the discretion was abused.

Because of the lack of reliable evidence establishing Stephenson had either engaged in criminal conduct or used alcohol to excess and because the district court made no written statement explaining the evidence relied on or the reasons for revoking release, we find the district court abused its discretion in this case and remand for another hearing. In light of this, we do not need to address Stephenson's argument that the condition against excessive use of alcohol is unconstitutionally vague.