**UNITED STATES of America**

v.

**Ronald KENNER, a/k/a Ronald Revere, a/k/a Derick Watford, Ronald Kenner, Appellant.**

**Nos. 08–1153, 08–1154.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 12, 2010.

Filed: March 16, 2010.

---

James R. Pavlock, Esq., Office of United States Attorney, Philadelphia, PA, for Appellee.

Robert M. Gamburg, Esq., Philadelphia, PA, for Appellant.

Before: BARRY, JORDAN, and VAN ANTWERPEN, Circuit Judges.

OPINION OF THE COURT

VAN ANTWERPEN, Circuit Judge.

Appellant–Defendant Ronald Kenner ("Kenner") appeals the District Court's finding that he violated the terms of his supervised release by committing a controlled substance crime; he claims the evidence is insufficient to support the court's finding. He also appeals his sentence of thirty-six months' incarceration as unreasonable. The Government asserts that the District Court did not err in finding, by a preponderance of the evidence, that Kenner committed the charged crime or in imposing the sentence. We agree with the Government.

I.

Because we write solely for the parties, we will address only those facts necessary to our opinion.

A grand jury indicted Kenner for possessing a firearm as a convicted felon on September 2, 1999, and Kenner was

charged in a separate case with conspiracy and bank robbery on June 16, 2000. Kenner pled guilty to both crimes, and the judge presiding over his gun case granted Kenner's motion to consolidate the cases for sentencing. Judge John R. Padova presided over the consolidated sentencing hearing. On June 21, 2001, Judge Padova sentenced Kenner to thirty-eight months' imprisonment on each of the three counts, all terms to run concurrently. The court also imposed a sentence of five years' supervised release on the bank robbery count and a sentence of three years' supervised release on both the conspiracy and gun possession counts, also to run concurrently. The court ordered Kenner to pay restitution in the amount of $7,840.00 and a special assessment of $300.00.

Kenner was released from custody and placed on supervised release on May 17, 2004.[1] On November 28, 2006, Judge Padova found Kenner in violation of several terms of his supervised release sentence. The Judge modified the terms of Kenner's supervised release to increase the monthly payments toward Kenner's restitution obli-

gation from fifty dollars a month to one hundred dollars a month.

On January 12, 2007, Kenner's probation officer filed a petition alleging that Kenner violated the terms of his supervised release by committing several Grade C violations,[2] including: (1) being arrested and charged for speeding and driving under the influence ("DUI"); (2) failing to report an arrest for DUI; (3) leaving the judicial district without permission from his probation officer; (4) failing to report for random drug testing; and (5) failing to notify his probation officer within ten days that he changed his residence. On July 12, the probation officer filed an amended violation notice, adding Kenner's arrest for criminal conspiracy, drug possession, and possession with intent to manufacture, all Grade A violations.

At his initial violation hearing in December 2007, Kenner admitted to committing all of the Grade C violations except the DUI. Kenner also contested the drug arrests. At the revocation of supervised re-

---

1. Judge Padova imposed the general terms of supervised release on Kenner, which include, among others, that Kenner is prohibited from committing a subsequent crime in violation of federal, state, or local law for the duration of the sentence. 18 U.S.C. § 3583(d). He also imposed the following special conditions:

"1) The defendant shall provide the probation officer with access to any requested financial information; 2) The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer; 3) The defendant shall participate in a drug aftercare treatment program which may include urine testing at the direction and discretion of the probation officer; and, 4) The defendant shall pay restitution in the amount of $7,480, at the rate of $50 per month."

(App. 8.)

2. The Sentencing Guidelines set forth three grades of probation and supervised release violations:

"(1) *Grade A Violations*—conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years;

(2) *Grade B Violations*—conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year;

(3) *Grade C Violations*—conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision."

U.S. Sentencing Guidelines Manual § 7B1.1(a) (2006).

lease hearing on January 8, 2008, Kenner opted not to contest the DUI arrest, but continued to contest the drug arrests.

The government offered the testimony of two officers as evidence that Kenner had violated the terms of his supervised release by possessing a controlled substance. Officer Planita testified that on May 29, 2007, he met with a confidential informant ("CI") who told him that a black male named "Ron"[3] lived in the 2500 block of West Gordon Street and was selling large quantities of drugs.[4] The CI identified a black Chrysler parked near 2537 West Gordon Street as belonging to Ron.[5] The CI also claimed, incorrectly, that Ron owned a garage at 2421 West Gordon Street. Based on this information, Officer Planita arranged for the CI to purchase a quarter pound of marijuana from Kenner the next day. On May 30, 2007, law enforcement searched the CI for any contraband and gave him prerecorded money for the buy.

Officer Morales testified that he surveyed 2537 West Gordon Street on May 30, 2007, beginning at 2:00 p.m. Just after he arrived, he saw Kenner leave the residence, get into the black Chrysler identified by the CI, and take the car to the gas station. A few minutes later, Kenner returned to the residence and entered by using a key. Officer Morales received information, sometime after 2:00 p.m., that the CI called to Kenner requesting to purchase marijuana.[6] Shortly thereafter, he saw Kenner leave the residence again and walk a few blocks to a garage at 2441 West Gordon Street. Kenner met the CI on the street in front of the garage. Officer Morales saw them talking, but could not hear what they said. Then he saw them enter the garage.

Officer Morales left the area because he was concerned that he had been spotted. Officer Planita, who was on mobile surveillance near the garage, took over surveillance at that point. Officer Planita arrived after Kenner and the CI had entered the garage. He saw a gold sport utility vehicle pull up outside the garage. The driver, later identified as George Mapp ("Mapp"), also entered the garage. Neither officer witnessed what happened inside the garage, nor are they aware if other people were inside the garage. Officer Morales testified that he returned to the area and witnessed the CI leave the garage. At that point, the CI met with Officer Planita and gave the police the quarter pound of marijuana he purchased inside the garage. Officer Planita could not remember if the CI told him who sold him the marijuana.

On June 19, 2007, the officers executed three search warrants: (1) one at the garage, (2) one at 2537 West Gordon Street, and (3) one at 1922 North 23rd Street. Officer Planita testified that he helped search the 2537 West Gordon Street residence. When law enforcement executed the warrant, Kenner and two other people were present in the house. Kenner was sitting on a couch in the living room. During the search, law enforcement officers recovered marijuana in the dining room and the second upstairs bedroom. No one confirmed who used the upstairs bedroom. Officers also found one four-ounce packet

---

3. Kenner's first name is Ronald.

4. Officer Planita testified that he ran a check on the 2537 West Gordon Street property but cannot remember who held title to the property. (App. 64.)

5. Record checks confirmed that the black Chrysler identified by the CI was registered to Kenner, but at a different address. (App. 70.)

6. Officer Planita testified that he was present when the CI allegedly called Kenner, but he could not hear the conversation.

of cocaine base in the residence, but Officer Planita could not recall where.

During the search, Kenner asked to speak to Officer Planita. Kenner asked if he could help himself by offering information about a stash of a large quantity of drugs and guns. Then, Kenner informed Officer Planita that there was a stash of drugs and guns at 1922 North 23rd Street. Immediately officers were sent to that address and detained Mapp, who was found at that location. Officer Morales testified that law enforcement searched the 1922 North 23rd Street premises and recovered $3,750.00 dollars in cash, five marijuana plants, a jar of marijuana, a jar of cocaine base, drug paraphernalia, and several assault rifles.

During the testimony, the District Court noted that the officers did not have any direct evidence that Kenner made any drug sales. Regardless, it found that "as a fact and ... as a matter of law, based on a preponderance of the evidence, even though there may have been some doubt, that [Kenner] violated the terms of his supervised release by illegally possessing controlled substances." (*Id.* 78.)

The District Court acknowledged that the Sentencing Guidelines recommend a sentence of twenty-four to thirty months' incarceration for violating his supervised release by possessing a controlled substance, but that the statutory maximum is thirty-six months incarceration. The court stated "that [Kenner is] an intentional, habitual violator of [his] terms of supervised release." (*Id.* 83.) The court characterized Kenner's violations as "egregious," and noted that the recommended sentence would be appropriate in "ordinary circumstances." (*Id.* 85, 86.) The court distinguished this case from ordinary circumstances because of Kenner's habitual violations and revoked Kenner's supervised release and reincarcerated him for

the statutory maximum of thirty-six months. (*Id.* 85–86.)

## II.

The District Court exercised jurisdiction under 18 U.S.C. § 3231 because Kenner was convicted of violating federal law in 1999 and 2000. The District Court had jurisdiction to decide whether Kenner violated the terms of his supervised release pursuant to 18 U.S.C. § 3583(e). This Court exercises jurisdiction over this appeal under 28 U.S.C. § 1291 and to review the sentence imposed on Kenner pursuant to 18 U.S.C. § 3742(a).

This Court reviews a district court's decision to revoke supervised release for abuse of discretion. *United States v. Maloney*, 513 F.3d 350, 354 (3d Cir.2008). This Court reviews the District Court's factual findings for clear error, but conducts de novo review of its legal conclusions. *Id.* It reviews a district court's sentence for violating supervised release for reasonableness. *United States v. Bungar*, 478 F.3d 540, 542 (3d Cir.2007).

## III.

Kenner asserts that the evidence presented at his violation hearing was too specious to support the District Court's finding, as a matter of fact and law, that the preponderance of the evidence indicates Kenner illegally possessed a controlled substance. The Government contends that the evidence was sufficient. We agree with the Government.

A district court must find that a defendant violated a condition of supervised release based on a preponderance of the evidence. 18 U.S.C. § 3583(e)(3); *Maloney*, 513 F.3d at 354. When the condition at issue is whether the defendant committed a new crime, there is no conviction or indictment requirement. *United States v.*

*Poellnitz,* 372 F.3d 562, 566 (3d Cir.2004). Rather, a court can revoke supervised release whenever it is "reasonably satisfied" that the defendant violated a condition. *Id.* This Court affords a district court "broad discretion" to find violations. *Id.* (quoting *United States v. Gordon,* 961 F.2d 426, 429 (3d Cir.1992)).

Kenner's principal argument is that the District Court erred by finding that he had violated the terms of his supervised release because the evidence did not establish that he actually or constructively possessed a controlled substance. This argument is a tough fit because the concept of constructive possession is normally considered in the context of convictions, though it also extends to proceedings involving the violations of supervised release. *See United States v. Blackston,* 940 F.2d 877, 883 (3d Cir.1991) (finding circumstantial evidence of constructive possession is sufficient to prove possession in violation of supervised release). We have held that evidence is sufficient to establish constructive possession, beyond a reasonable doubt, if it proves

> "an individual knowingly has both the power and the intention at a given time to exercise dominion and control over a thing, either directly or through another person or persons. Constructive possession necessarily requires both dominion and control over an object and knowledge of that object's existence."

*United States v. Cunningham,* 517 F.3d 175, 178 (3d Cir.2008) (citing *United States v. Iafelice,* 978 F.2d 92, 96 (3d Cir.1992)). Dominion and control are not established by "mere proximity to the [contraband], or

mere presence ... where it is located." *United States v. Garth,* 188 F.3d 99, 112 (3d Cir.1999) (quoting *United States v. Brown,* 3 F.3d 673, 680 (3d Cir.1993)). The fact that others had access to the drugs, however, does not diminish a finding of constructive possession. *Id.*

Kenner contends that the Government's evidence merely established he was proximate to, rather than had any dominion and control over, the drugs recovered in this case by analogizing his circumstances to those in *United States v. Jenkins,* 90 F.3d 814 (3d Cir.1996) and *United States v. Beverly,* 750 F.2d 34 (6th Cir.1984). In *Jenkins,* this Court determined that evidence that a man was (1) in someone else's apartment, (2) sitting on the couch, in his boxers, and (3) in front of a table where there were three bags of drugs was insufficient to support a finding that he had dominion and control over those drugs. 90 F.3d 814, 816 (3d Cir.1996). In *Beverly,* the Sixth Circuit determined that, considering the evidence in the light most favorable to the government, that a rational trier of fact could not conclude that a man had constructively possessed a gun based on the facts that (1) that he was sitting in someone else's house, (2) two guns were found in the house, nearby him, in a wastebasket, and (3) his fingerprint was on one of the guns. 750 F.2d 34, 35–36 (6th Cir.1984). Kenner suggests that the facts offered in his case, like in *Jenkins* and *Beverly,* merely established that he was present where the drugs were found. Therefore, the evidence fails to prove constructive possession by a preponderance of the evidence.[7]

---

7. Kenner also argues that in *Beverly* the Sixth Circuit assessed the evidence under the preponderance of the evidence standard because it considered whether the District Court erred by denying the defendant's motion for acquittal. *Beverly,* 750 F.2d at 35. Kenner is mistaken. A court considering a motion for acquittal reviews the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt. *United States v. Coleman,* 811 F.2d

■ Kenner's circumstances are distinguishable from both *Jenkins* and *Beverly*. The officer's testimony establishes that, like the defendants in *Jenkins* and *Beverly*, Kenner was present where drugs were recovered on two occasions: (1) Officer Morales saw Kenner talk to the CI and accompany the CI into a garage where the CI purchased marijuana, and (2) Kenner was inside the 2537 West Gordon Street residence where law enforcement recovered marijuana and cocaine base. Both the *Jenkins* and *Beverly* Courts, however, emphasized that evidence of presence was insufficient to prove constructive possession because there was no other evidence tying the defendants to the objects in question. *Jenkins*, 90 F.3d at 820–21 (emphasizing that there was no evidence except Jenkins' proximity suggesting he participated in drug distribution); *Beverly*, 750 F.2d at 37 (noting the evidence "establishes only that Beverly was in the kitchen in Hatfield's residence, that Beverly was standing close to the waste basket which contained two guns, and that Beverly had at some point touched one of the guns").

In this case, the Government offered additional circumstantial evidence tying Kenner to drug possession or distribution, including: (1) the fact that the CI identified Kenner as someone who was selling drugs from 2537 West Gordon Street; (2) the officers' testimony that he saw Kenner

meet the CI shortly after the CI placed a call to him requesting drugs; and (3) the surveillance of Kenner entering 2537 West Gordon Street with keys, which suggests he was a resident,[8] and not merely present, at a premises where drugs were recovered. Because the circumstantial evidence in this case establishes more than Kenner's mere presence near the recovered drugs, Kenner's argument to the contrary fails.

Kenner also tries to analogize his case to another Sixth Circuit case, *United States v. Stephenson*, 928 F.2d 728 (6th Cir.1991). In *Stephenson*, the Sixth Circuit held that a probation officer's testimony that a defendant was arrested for assault, and the defendant's admission that "there was some pushing in there" was insufficient evidence, together, to establish that he had committed the crime of assault. *Id.* at 731. Kenner explains that by analogy, "the defendant's presence at a scene where drugs were found, without anything else, was simply not enough to demonstrate that the defendant had broken the law." (Appellant's Br. 9.) This analogy is not compelling, however, because the *Stephenson* Court did not comment on the sufficiency of the evidence related to constructive possession under the preponderance standard. In sum, the evidence proffered against Kenner is more compelling than that in any of the cases to which Kenner

---

804, 807 (3d Cir.1987). Although this standard may be lesser than the reasonable doubt standard because a court is assessing whether a jury could find beyond a reasonable doubt rather than whether the evidence demonstrates guilt beyond a reasonable doubt, the standard is certainly higher than the preponderance standard which requires a trier of fact only believe an "existence of a fact is more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)(Harlan, J., concurring). As a result, the analogy to *Beverly* is hard a fit because the court was assessing the evidence

under a different evidentiary standard than that at issue in this case.

**8.** We determined that evidence that a person had a key to a residence where drugs were found, but is not on the lease, without more, is insufficient to establish that the person had constructive possession over the any drugs found in the house. *United States v. Brown*, 3 F.3d 673, 681 (3d Cir.1993). The Government offered additional evidence tying Kenner to drug distribution beyond Kenner's residence at 2537 West Gordon Street, thus, Kenner's case is distinguishable.

draws an analogy. Therefore, we are not persuaded by Kenner's arguments.

Whether there is sufficient evidence to establish a violation is a factual question, which we review for clear error. *Maloney*, 513 F.3d at 354; *Poellnitz*, 372 F.3d at 565 n. 6. In a violation hearing, the evidence need only establish the violation by a preponderance of the evidence, i.e., whether the existence of a fact is more probable than non-existent. 18 U.S.C. § 3583(e)(3); *Winship*, 397 U.S. at 371, 90 S.Ct. 1068 (Harlan, J., concurring); *Maloney*, 513 F.3d at 354. We review, therefore, whether the District Court committed clear error by finding that the evidence established it was more probable than not that Kenner possessed a controlled substance. The District Court acknowledged that there was no direct evidence that Kenner possessed any drugs. (App. 53.) Regardless, it found as a matter of fact, "even though there may have been some doubt," that the preponderance of the evidence established that Kenner illegally possess controlled substances. (*Id.* 78). The evidence establishes that a CI identified Kenner as a drug distributor, Kenner resided at a house where drugs were found, that Kenner associated with a large drug distributor, and he responded to a CI's request for drugs. Because this evidence suggests that it is more probable than not that Kenner possessed a controlled substance, the District Court did not clearly err by finding Kenner possessed drugs. Therefore, we will affirm the District Court's conclusion that Kenner violated his supervised release by possessing a controlled substance.

## IV.

■ Kenner asserts that his thirty-six month sentence of incarceration for violating the terms of his supervised release is unreasonable. The Government contends that this sentence is reasonable and should be affirmed. We agree with the Government.

We review sentences imposed for violating the terms of supervised release for reasonableness. *Bungar*, 478 F.3d at 542 (noting that post-*Booker*, an appellate court reviews a sentence for reasonableness regarding the § 3553 factors, and this same standard should apply to revocation sentences). When imposing a sentence after revoking a defendant's supervised release, the District Court, in accordance with 18 U.S.C. § 3583(e), must give reasonable consideration to the factors set forth in 18 U.S.C. § 3553(a) and must apply those factors to the factual circumstances of the case. It should also take into account, "to a limited degree, the seriousness of the underlying violation and the criminal history of the violator" and the policy statements under Chapter Seven of the Sentencing Guidelines. *United States v. Dees*, 467 F.3d 847, 853 (3d Cir.2006) (internal quotation marks and citation omitted).

To determine reasonableness, this Court considers whether the District Court gave meaningful consideration to the § 3553(a) factors and applied those factors to the circumstances of the case. *Bungar*, 478 F.3d at 543. Our review of the District Court's application of the § 3553 factors to the factual circumstances in the case is "highly deferential"; we may not substitute our judgment for the District Court's and must affirm if the final sentence is within the permissible range and was premised on appropriate judicious consideration. *Bungar*, 478 F.3d at 543.

Kenner argues that his sentence is unreasonable in light of the § 3553(a) factors. His main contention is that the District Court failed to adequately explain why imposing the statutory maximum sentence, thirty-six months' of incarceration, more

appropriately serves the goals of criminal law than a twenty-four to thirty month sentence of incarceration, as suggested by the Sentencing Guidelines. He further asserts that a thirty-six month sentence is greater than necessary to punish him.

The Sentencing Guideline ranges are merely advisory. *United States v. Booker*, 543 U.S. 220, 259, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Moreover, the District Court explained that under "ordinary circumstances" the guidelines range of twenty-four to thirty months would have been sufficient. (App. 86.) The District Court distinguished this case from an ordinary case, however, because Kenner is a "habitual offender, engaged in serious anti-social conduct . . . [and had violated] the terms of his supervised release on multiple [occasions] over a significant period of time." (*Id.* 85.) Contrary to Kenner's assertions, the District Court did not act unreasonably in imposing a thirty-six month sentence because it expressly explained that under the § 3553(a) factors it was necessary to impose a greater sentence because Kenner needed more deterrence than the ordinary violator contemplated by the sentencing guidelines.

Kenner further challenges the District Court's application of the § 3553(a) factors, claiming that the Court did not consider Kenner's proffer of mitigating evidence that he had long-term employment. The District Court, however, heard evidence on this issue and acknowledged that Kenner was an "able, talented guy." (*Id.* 80). Therefore, Kenner's claim that the District Court did not consider this evidence is without merit.

Additionally, Kenner argued that the District Court erred because it improperly relied on the fact that Kenner had not fully repaid his restitution obligation. But paying restitution is a term of Kenner's supervised release, which he admitted he violated. (*See* App. 82 (noting he paid seventy-five dollars a month rather than one hundred dollars a month and that he stopped paying when he absconded).) Because paying restitution was one of Kenner's terms of supervised release, it was within the Court's discretion to consider Kenner's efforts in meeting this obligation.

Kenner did not challenge the District Court's application of the other § 3553(a) factors. It is clear that the District Court considered the applicable guidelines range, and gave meaningful consideration to the relevant § 3553 factors before imposing Kenner's sentence. Therefore, the court did not act unreasonably by imposing a thirty-six month sentence and we will affirm.

## V.

We will affirm the District Court's judgment that Kenner violated the terms of his supervised release by possession a controlled substance, and its sentence.