NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0118n.06

Case No. 24-5298

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 28, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| QUINTON JAMES GROVE, | ) | |
| Defendant-Appellant. | ) | O P I N I O N |
| | ) | |

Before: THAPAR, NALBANDIAN, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Less than one month after Quinton James Grove began a term of supervised release, the Department of Homeland Security ("DHS") intercepted a package addressed to Grove containing fake driver's licenses bearing his photograph. Grove's probation officer petitioned the court to revoke his supervised release for (1) committing a new crime and (2) communicating with someone involved in unlawful activity. Grove denied committing any crime or violating his conditions of release. Following a hearing on the matter, the district court revoked his supervised release and sentenced him to 12 months' imprisonment, followed by 4 years of supervised release. Grove challenges the revocation and the procedural reasonableness of his sentence, arguing the court should have applied Amendment 821 to the Sentencing Guidelines to reduce his Guidelines range. As the district court did not abuse its discretion or plainly err, we AFFIRM.

**I.**

**A. Factual Background**

In June 2023, Grove completed a five-year prison term for conspiracy to distribute 100 kilograms of marijuana and began five years' supervised release in the Eastern District of Michigan.[1] Less than a month later, DHS intercepted a package addressed to "James Grove" from a Chinese company known for creating fake identification documents ("ID" or "IDs"). The package contained fake driver's licenses, over a dozen of which displayed Grove's photograph with personal identity information such as names, license numbers, dates of birth, and social security numbers of at least six South Carolina drivers.[2] DHS also determined that the U.S. telephone number that placed the order for the IDs belonged to or was linked to Grove. The package was addressed to an abandoned house owned by the City of Detroit. Fake licenses with photos of two other men on supervised release were also in the parcel.

Grove's probation officer, Heath Eanes, spoke with DHS Special Agent Erin Hughes who informed him about her investigation into chatter picked up on a Chinese website about fraudulent identification documents that were being produced and shipped to a Michigan address. Hughes also described how DHS had intercepted the package, discovered its contents, and linked it to Grove. After examining the licenses himself and recognizing Grove's photograph on the fake licenses, Eanes petitioned the district court to revoke Grove's supervised release for violating (1) the mandatory condition that he "not commit another federal, state, or local crime" and (2) the standard condition that he "not communicate or interact with someone [he] [knew to be] engaged

---

[1] The Eastern District of Michigan agreed to supervise Grove, but not to accept jurisdiction of his case, which still resided with the Eastern District of Tennessee. Eanes remained the probation officer.

[2] One of the licenses had numerical information off by one digit from the genuine South Carolina license it appeared to copy.

in criminal activity." (R. 219, PageID 752–53). The petition alleged that Grove ordered fraudulent IDs and thus committed identity theft in violation of Title 18 U.S.C. § 1028.

### B. Procedural Background

In March 2024, the district court held a revocation hearing, and Eanes testified about his investigation, including the information he had received from DHS and his examination of the fake licenses. For his part, Grove denied ordering the IDs or otherwise violating the terms of his supervised release.

The district court found by a preponderance of the evidence that Grove violated the conditions of his supervised release by "possessing or attempting to possess these fake identification documents." (Supv. Release Viol. Hrg. Tr., R. 437, PageID 2819). The court found Grove responsible for both alleged violations: (1) committing a new crime and (2) communicating with someone engaged in criminal activity. The court emphasized that a fake ID with Grove's picture on it was useful only to Grove and only "for some nefarious purpose." (*Id.* at PageID 2818). The court also detected a pattern of behavior, based on Grove's prior possession of a fake driver's license during the investigation of his underlying marijuana-trafficking offense. The court concluded that "the circumstantial evidence is pretty strong that Mr. Grove has ordered fake identification" to lay "the foundation once again [for] criminal activity." (*Id.* at PageID 2817–20).

The court then revoked Grove's supervised release, found that Grove committed a Grade B violation, and calculated a Guidelines range of 8 to 14 months. Considering the 18 U.S.C. § 3553(a) sentencing factors, it determined that a bottom-of-the-range sentence was not appropriate because of the similarity to past conduct, the need to deter Grove, and the need to protect the public from future crimes, which "compel[led] significant punishment." (*Id.* at PageID

2820–21). The court then sentenced Grove to 12 months' imprisonment, followed by 4 years' supervised release. Grove timely appealed.

## II. STANDARD OF REVIEW

We review both a district court's revocation of supervised release and the reasonableness of a post-revocation sentence under an abuse-of-discretion standard. *United States v. Givens*, 786 F.3d 470, 471 (6th Cir. 2015); *United States v. Polihonki*, 543 F.3d 318, 322 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 41 (2007)). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, applies the law improperly, or uses an erroneous legal standard." *United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010). We will find a district court's factual findings clearly erroneous only if we are left "with the definite and firm conviction that a mistake has been committed." *United States v. Mosley*, 53 F.4th 947, 960 (6th Cir. 2022) (internal quotation marks and citation omitted). Hence, "we affirm a district court's finding of fact so long as the finding is 'plausible in light of the record viewed in its entirety.'" *United States v. Grant*, 15 F.4th 452, 457 (6th Cir. 2021) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)). Grove concedes that his procedural reasonableness challenge—asserting that Amendment 821 applied to his Guidelines range—is subject to plain-error review because he did not raise it before the district court. *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010).

## III. ANALYSIS

### A. Revocation of Supervised Release

Grove argues that the government presented insufficient evidence in the district court to prove by a preponderance the essential elements of identity theft under 18 U.S.C. § 1028. The government counters that the preponderance of the evidence showed that Grove committed

attempted identity theft under 18 U.S.C. § 1028(f) and in doing so, necessarily communicated with someone he knew to be engaged in criminal activity.

At a revocation hearing, "[t]he [district] court may, after considering [certain factors] . . . revoke a term of supervised release, . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). Revocation hearings are more flexible than criminal trials. *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991) (citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). Indeed, defendants under court supervision are not entitled to "the full panoply of process due to a criminal accused of a crime in the first instance." *Givens*, 786 F.3d at 472 (citing *Morrissey*, 408 U.S. at 489). When new criminal conduct is alleged, a judge may find that the defendant violated a condition of his supervised release based on his "own finding of new criminal conduct" even if there are no criminal charges or convictions that follow. *Stephenson*, 928 F.2d at 732 (internal quotation marks omitted); *see also* U.S.S.G. § 7B1.1, cmt. n.1. And, while the government maintains the burden to prove the violations by a preponderance of the evidence, the proceedings are not governed by the Federal Rules of Evidence. *See* Fed. R. Evid. 1101(d)(3).

### 1. *Violation 1: Commission of a New Crime*

Based on its factual findings that Grove "ordered fake . . . items of identification" and was "attempting to do exactly what he had done before"—i.e., use a fake ID to conceal his true identity—the district court concluded that Grove's conduct was criminal and violated his release conditions. (Supv. Rel. Viol. Tr., R. 437, Hearing Tr., PageID 2817–18). While Grove challenges the court's factual findings, the government contends the court did not clearly err in its findings and the record supports the conclusion that Grove committed the crime of attempted identity theft in violation of 18 U.S.C. § 1028(a)(7). We agree.

Section 1028(a)(7), commonly known as identity theft, makes it unlawful to "knowingly transfer[], possess[], or use[], without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law." 18 U.S.C § 1028(a)(7); *see also United States v. Jones*, 817 F. App'x 138, 140 (6th Cir. 2020). And § 1028(f) makes it a separate crime to attempt to commit the offense defined by § 1028(a)(7). To prove attempt, the government must establish: "(1) an intent to engage in criminal activity, and (2) the commission of an overt act constituting a substantial step towards the commission of the substantive offense." *United States v. Yang*, 281 F.3d 534, 543 (6th Cir. 2002). The overt act must "objectively mark[] the defendant's conduct as criminal in nature." *United States v. Ferguson*, 65 F.4th 806, 812 (6th Cir. 2023). Preliminary or planning activities are not sufficient, but evidence that the defendant committed even "a fragment of the crime" may sustain a conviction for criminal attempt. *Id.* (quoting *United States v. Price*, 134 F.3d 340, 351 (6th Cir. 1998)).

Here, the government presented evidence that the package was addressed to James Grove at an abandoned Detroit house; the phone number used to place the order was linked to Grove; and Grove's photograph appeared on fourteen of the fake IDs. Also, Grove previously used a fake ID "to basically conceal his . . . true identity" during the course of the criminal conspiracy that was the offense of conviction underlying his supervised release. (Supv. Release Viol. Hrg. Tr., R. 437, PageID 2817). These facts raise a reasonable inference that Groves ordered the fake IDs. Further, Grove's previous use of a fake ID shows that he understood what a fake ID was and how to obtain one. And the fact that the licenses featured his photograph with the personal identity information of real people shows he intended to use the identity of another or others. Considering the totality

of the circumstances, the district court could reasonably find that Grove intended to knowingly possess or use, without lawful authority, the means of identification of another person, in connection with other unlawful activity in violation of Federal law. *See* 18 U.S.C § 1028(a)(7).

As for a substantial step, evidence that the ordering phone number was linked to Grove and the package arrived addressed to him indicates that it is more likely than not that Grove placed the order for the fake IDs. As the district court aptly observed, no other person could benefit from fourteen fake IDs featuring Grove's picture. Moreover, the fake IDs combined Grove's picture with the stolen names and other personal identity information of real people. So they objectively marked Grove's conduct as criminal in nature. *Ferguson*, 65 F.4th at 812. Ordering the IDs was more than a preliminary or planning activity; "[a] fragment of the crime" was essentially in progress. *Ferguson*, 65 F.4th at 812; *see also United States v. Bilderbeck*, 163 F.3d 971, 975 (6th Cir. 1999) ("[W]hen a defendant engages in active negotiations to purchase [illegal goods], he has committed the 'substantial step' towards the crime of possession required to convict him of attempted possession.").

Grove's arguments to the contrary are fruitless. For instance, Grove faults the district court for relying on circumstantial evidence, and he attacks Eanes's testimony as vague and indeterminate, based on personal opinion, and lacking a factual basis. "But circumstantial evidence alone can support conviction." *United States v. Bowens*, 938 F.3d 790, 794 (6th Cir. 2019). And a "probation officer's testimony" can suffice as evidence that a defendant committed a crime on supervised release especially when the officer "engaged in an independent and thorough investigation," such as "sp[eaking] with agents investigating the case" and "personally review[ing]" physical evidence. *United States v. Kirby*, 418 F.3d 621, 626–27 (6th Cir. 2005). Here, Eanes spoke with the DHS agent investigating Grove's conduct and personally reviewed the

fake IDs to identify Grove and match the information to South Carolina licenses. These circumstance imbued Eanes's testimony with "more than a minimum indicium of reliability." *United States v. Reid*, 357 F.3d 574, 582 (6th Cir. 2004) (internal quotation marks omitted). And because Eanes's testimony was reliable, the district court did not clearly err by crediting it. *See Kirby*, 418 F.3d at 628; *Givens*, 786 F.3d at 472. We, as a reviewing court, cannot "reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Grove also contends that the government did not prove essential elements of identity theft—like knowledge or possession. But his elements-based arguments are inapposite. Attempted identity theft is its own crime, so the government was not required to prove the elements of the separate crime of identity theft. *See* 18 U.S.C. § 1028(f). Thus, these arguments place no dent in the district court's conclusion that Grove attempted identity theft, which violated his supervised release terms.

Nor does Grove's argument that the district court relied solely on his past conduct as evidence gain him any traction. To begin, this characterization is off base. The district court considered the totality of the evidence: the package addressed to Grove, the fake IDs with Grove's photograph, and his previous use of a fake ID, among other things. And despite Grove's argument to the contrary, the government was not required to exclude all alternative explanations. *See United States v. Adamo*, 742 F.2d 927, 932 (6th Cir. 1984), *abrogated on other grounds by Buford v. United States*, 532 U.S. 59 (2001). Indeed, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574. The government simply needed to show that it was more likely than not that Grove had

the requisite intent to commit identity theft and that he took a substantial step toward that crime. And the government met this burden.[3]

### B. Post-Revocation Sentencing: Amendment 821

Grove also challenges the procedural reasonableness of his 12-month sentence. His sole argument is that the district court erred by failing to apply Amendment 821 to the U.S. Sentencing Guidelines ("U.S.S.G.") at sentencing. *See* U.S.S.G. Amendment 821. For defendants with six or fewer criminal history points, Part A of Amendment 821 eliminated the previous two-point enhancement for committing an offense while under any criminal justice sentence. *Id.* Grove contends that the district court should have retroactively applied Amendment 821—now codified at U.S.S.G. § 4A1.1(e)—to remove two status points he had received under an earlier version of § 4A1.1(d). Doing so would have reduced Grove's criminal history score from five to three points and his criminal history category from III to II.[4] He argues that the district court procedurally erred when it failed to incorporate this change, which would have lowered his Guidelines range from 8 to 14 months to a range of 6 to 12 months.

Grove did not raise this issue below. So we apply plain-error review. *See Wallace*, 597 F.3d at 802. To demonstrate plain error, Grove must show that the district court made "(1) an error, (2) that was obvious or clear, (3) that affected the defendant's substantial rights, and (4) that

---

[3] Grove states, in a footnote, that the government "appeared to abandon" below the second alleged violation in the revocation petition—i.e. that he communicated with someone he knew to be engaged in criminal activity in violation of Standard Condition #8—by not attempting to prove it. (ECF 23, Appellant Br. 4 n.1). He then makes no argument concerning Violation Number 2, in particular whether the evidence in the record supports the district court's judgment. And he offers no reply to the Government's arguments in support of the district court's judgment. Thus, to the extent Grove intended to include the district court's finding that he violated Standard Condition #8 as grounds for reversal, his failure to provide any developed argumentation on the issue renders it forfeited. *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946–47 (6th Cir. 2022). And we decline to exercise our discretion to address it or disturb the district court's decision on this basis.

[4] Grove notes that the Commission made this change retroactive. *See* U.S.S.G § 1B1.10(d), cmt. n.7. He maintains that, under U.S.S.G. § 1B1.11(a), the court must use the Guidelines Manual in effect on the date he was sentenced, and the effective Guidelines Manual as of his supervised-release revocation sentencing included Amendment 821.

affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Bauer*, 82 F.4th 522, 530 (6th Cir. 2023) (citing *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)). An error is clear or obvious if it is not "subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

We have persuasively concluded, albeit in nonprecedential cases, that a district court does not plainly err when it declines, pursuant to U.S.S.G § 7B1.4, cmt. n.1., to apply Amendment 821 following a supervised-release revocation. *See, e.g.*, *United States v. Nelson*, No. 24-1290, 2024 U.S. App. LEXIS 17733, at *6 (6th Cir. July 18, 2024); *United States v. Patrick*, No. 21-5198, 2021 U.S. App. LEXIS 27354, at *6 (6th Cir. Sept. 9, 2021).

However, we need not decide that issue because even assuming error here, Grove has not demonstrated that any such error affected his substantial rights. "An error affects a defendant's substantial rights when there is 'a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Bauer*, 82 F.4th at 530 (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)). Notably, Grove's 12-month sentence falls within the slightly lower Guidelines range of 6 to 12 months he proposes under Amendment 821. And here, after applying the § 3553(a) factors, the district court expressly found that a 12-month sentence was necessary to deter Grove and protect the public from further crimes. The district court noted that this was not the first time Grove violated the conditions of release and this violation came in close proximity to his release from custody—a factor that counseled against a sentence at the low end of the range. It also considered that "he's sophisticated in organizing people," something the court believed he was doing here. (Supv. Rel. Viol. Tr., R. 437, PageID 2819). These factors did not change, and Grove has not explained how this lower Guidelines range, which decreased the

advisory cap by a mere two months, raised a reasonable probability of a shorter sentence. The district court did not plainly err in declining to apply Amendment 821.

## IV.    CONCLUSION

We AFFIRM.