NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0041n.06

No. 25-1512

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 22, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff–Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| NICHOLAS JAVON MARTIN, | ) | |
| Defendant–Appellee. | ) ) | OPINION |

---

Before: KETHLEDGE, BUSH, and NALBANDIAN, Circuit Judges.

**JOHN K. BUSH, Circuit Judge**. While on supervised release, Nicholas Javon Martin was arrested for assault by strangulation and domestic violence, third offense. At a supervised release revocation hearing, the government introduced the testimony of Martin's probation officer, a video of police body camera footage, and certain photographs. Based on this evidence, the district court revoked Martin's supervised release and imposed an active term of incarceration. On appeal, Martin alleges that the district court violated his due process rights because it denied him the opportunity to confront and cross-examine the witnesses in the video who claimed that he assaulted the victim. We disagree and **AFFIRM**.

**I.**

In 2017, Martin pled guilty to possession with intent to distribute controlled substances and possession of a firearm in furtherance of a drug-trafficking offense. The district court sentenced Martin to a period of imprisonment and supervised release, and, as part of the conditions of his supervised release, Martin was prohibited from committing any new crimes.

Following Martin's release from prison in 2024, his supervision commenced. But it was short-lived. One year later, and while Martin was still on supervised release, his girlfriend, Ashley Butler, called the police to report that Martin had assaulted her. The call resulted in Martin's arrest for domestic violence, third offense, and assault by strangulation.

As a result, Martin's probation officer petitioned the court for a warrant or summons alleging that Martin had violated various terms of his supervised release, including that he had committed the new crimes of assault by strangulation (Violation 1) and domestic violence, third offense (Violation 2).[1]

In May 2025, the district court held a supervised release revocation hearing. At the hearing, Probation Officer Alexander Kellogg testified that he received a call from Butler in which she stated that Martin had assaulted her the previous night. When counsel for the government asked Officer Kellogg "what did [Butler] allege when she talked to you?", counsel for Martin objected on hearsay grounds. R. 91, Supervised Release Hr'g Tr., PageID 427. But the district court overruled the objection and noted that hearsay was allowed so long as there was "a sufficient indicia of reliability." *Id.*

Officer Kellogg testified that he received the police reports and police body camera footage following the incident, and the government moved to admit the body camera footage (Exhibit 1). Martin did not object to the admission of the video. In the video, Butler stated to the reporting officer, Officer Misner, that Martin "choked" her, "pulled" her hair, and "ripped off" her clothes during an argument over the use of a vacuum. Ex. 1, Body Worn Camera Footage, at 1:14–22. She also claimed that Martin put her in a chokehold and attempted "to drag [her] to the bedroom."

---

[1] Although the petition alleged 8 total violations, only Violations 1 and 2 are relevant to this appeal.

*Id.* at 2:29–37. Lastly, Butler showed Officer Misner her ripped shirt and claimed that she was "scared to death." *Id.* at 6:05–18.

Butler's two minor children also appeared in the video. The first child stated that she overheard Martin and Butler arguing about the vacuum, and then she saw Martin pull Butler's hair and choke her. The other child stated that Martin choked Butler and ripped her shirt.

Officer Kellogg testified that following Martin's arrest, Butler arrived at the probation office to seek help for fear of Martin's potential retaliation. While there, police took photographs of the bruises on Butler's arm. The photographs were admitted at the hearing.

The district court found that Martin violated the conditions of his supervised release by a preponderance of the evidence, and it revoked his supervision and sentenced him to serve an active term of incarceration. Specifically, the court noted that the children's testimonies were credible and corroborated Butler's telling of the incident, which supported Violation 1. As to Violation 2, the court relied on the admitted photographs that demonstrated bruising, thereby supporting the claim of a physical altercation. Martin timely appealed.

## II.

A district court is permitted to revoke a period of supervised release after it conducts a hearing and "find[s] by a preponderance of the evidence that a defendant has violated a condition of his supervised release." *United States v. Lowenstein*, 108 F.3d 80, 85 (6th Cir. 1997). We review a revocation of supervised release for an abuse of discretion. *United States v. Kirby*, 418 F.3d 621, 625 (6th Cir. 2005). In so doing, we "giv[e] fresh review to [the district court's] legal conclusions and clear-error review to its fact findings." *United States v. Kontrol*, 554 F.3d 1089, 1092–93 (6th Cir. 2009) (citations omitted). And if a defendant failed to lodge an objection before

the district court that he now raises as an argument on appeal, we review only for plain error. *United States v. Prater*, 766 F.3d 501, 506 (6th Cir. 2014).

Here, Martin contends that the district court erred "when, at a supervised release revocation hearing, it allowed the government to admit into evidence body camera footage." Appellant Br. at 6. To avoid mere plain error review of this argument, Martin was required to object with a "reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (cleaned up). Martin did not make that showing before the district court. In fact, when the district court judge asked Martin if he had any objection to the admission of the video, he responded in the negative: "No, Your Honor." R. 91, Supervised Release Hr'g Tr., PageID 428.

Although Martin *did* object on hearsay grounds to the statements Butler told Officer Kellogg during their phone call, that is not the same as objecting to the admission of the video footage. Nor is it synonymous with objecting to the district court's failure to expressly balance his interest in confrontation with the government's reasons for not producing the witnesses at the hearing, as Martin now does on appeal. In sum, Martin did not adequately apprise the district court of the arguments he now makes on appeal. So we review for plain error. And for Martin to prevail on plain error review, he must demonstrate that the error was "obvious or clear," that it "affected [the] defendant's substantial rights," and that it "affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (cleaned up). "This is a demanding standard," and the error must be "so plain that the trial judge was derelict in countenancing it." *United States v. King*, 914 F.3d 1021, 1024 (6th Cir. 2019). Recognizing this standard, we turn to the merits of Martin's arguments.

He asserts two main arguments on appeal. *First*, he contends that the district court erred when it admitted the footage of Butler and her children claiming that Martin assaulted Butler. *Second*, Martin asserts that the district court erroneously failed to state on the record why the statements in the video were reliable. Relatedly, he argues that the district court should have required the government to expressly state on the record why it did not produce the witnesses at the hearing for Martin to confront and cross-examine.

"[R]evocation hearings are more flexible than a criminal trial." *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991). Indeed, a defendant facing a revocation proceeding is not entitled to "the full panoply of rights," only the "minimum requirements of due process." *Morrissey v. Brewer*, 408 U.S. 471, 480, 489 (1972). That said, a defendant still must receive "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C).

Because the Confrontation Clause and Federal Rules of Evidence do not apply in supervised release revocation hearings, hearsay is admissible so long as it is proven reliable. *Kirby*, 418 F.3d at 627–28; *see also United States v. Kokoski*, 435 F. App'x 472, 474 (6th Cir. 2011). Hearsay evidence "supported by corroborating evidence has been recognized as reliable." *See Kokoski*, 436 F. App'x at 474–75.

The district court did not plainly err when it found the video footage reliable and admitted it into evidence. In the video, Butler states that Martin choked her, pulled her hair, and tore her shirt during an argument over the use of a vacuum. Butler also shows Officer Misner her torn shirt, and she gestures towards her body where she claims that Martin assaulted her. After Butler's statements, the video depicts her children reporting an identical sequence of events: Martin and

Butler argued about the vacuum, and Martin pulled Butler's hair, choked her, and ripped her shirt. Butler's recollection of the incident in the video was detailed, and her children's statements were consistent and corroborated her claims. And nothing in the video suggests that Butler encouraged her children or that officers fished for a specific story consistent with Butler's recollection. In other words, the district court did not plainly err in finding that all statements in the video were consistent and therefore reliable. *See United States v. Moncivais*, 492 F.3d 652, 658–59 (6th Cir. 2007) (concluding that a statement was sufficiently reliable because it was detailed and "both internally and externally consistent.").

Although Martin contends that Butler's statements were "questionable," Appellant Br. at 14, we neither reweigh the evidence nor consider the credibility of witnesses when considering whether the district court properly found that a defendant violated a condition of his supervised release. *United States v. Hector*, 771 F. App'x 645, 647 (6th Cir. 2019).[2] We therefore cannot say that the district court plainly erred when it found that Butler's children corroborated her story and that all the witnesses "appeared to be telling the truth" and "seemed sincere." R. 91, Supervised Release Revocation Hr'g, PageID 466.

In addition to the internally consistent statements in the video, the district court heard testimony from Martin's probation officer, Officer Kellogg, who testified that he received a call

---

[2] Martin repeatedly states that Butler's failure to appear for the court hearings in the state case (which ultimately resulted in the dismissal of the state charges against Martin) must "mean something." Appellant Br. at 9, 12. Yet a district court still acts within its discretion when it finds a defendant violated a condition of his supervised release "based on his own finding of criminal conduct even if the defendant is later acquitted of all charges arising from the same conduct, all criminal charges arising from the same conduct are dismissed prior to trial, or the defendant's criminal conviction is subsequently overturned." *Stephenson*, 928 F.2d at 732 (cleaned up). Thus, Butler's failure to appear for the state court hearings—and the state's subsequent dismissal of charges against Martin—do not convince us that the hearsay evidence introduced at the revocation proceeding was unreliable and that the district court erred.

from Butler. According to Kellogg, Butler stated during that call that Martin had assaulted her the previous night. And following that call, police took photographs of bruises on Butler's body, which were admitted into evidence during the revocation hearing. Kellogg's testimony and the photographs further corroborate the witnesses' hearsay statements in the video. *See Kokoski*, 436 F. App'x at 474–75 (hearsay evidence recognized as reasonable if it is supported by corroborating evidence). Put differently, the government's evidence produced at the revocation hearing was not only internally consistent (referring to the statements in the video itself) but it was externally consistent as well (referring to the testimony of Officer Kellogg and the admitted photographs). Considering this evidence, Martin has failed to demonstrate a "clear" or "obvious" error warranting reversal. *See Vonner*, 516 F.3d at 386.

The district court also did not plainly err when it failed to expressly balance Martin's interest in confrontation against the government's good cause for denying it before admitting the hearsay evidence. Relatedly, the district court did not plainly err when it did not require the government to expressly state the reasons for not producing the witnesses at the hearing for Martin to confront and cross-examine.

"[W]e have never required district courts to conduct this balancing test on the record." *United States v. Caluya*, 2023 WL 7274671, at *4 (6th Cir. Nov. 3, 2021); *see also United States v. Coleman*, 570 F. App'x 438, 440–41 (6th Cir. 2014) (rejecting defendant's reliance on *Kokoski* for the proposition that the district court erred by failing to expressly balance the parties' interests in making its reliability finding). And Martin even admits this in his briefing. Balancing is especially not required where, like here, a defendant has failed to object on this basis. *See United States v. Lofton*, 810 F. App'x 436, 441 (6th Cir. 2020) ("We know of no case holding that a district court must weigh the parties' interests when . . . the defendant raised no objection to the hearsay

evidence in the district court, leaving the district court with no reason to engage in a balancing of the competing interests." (cleaned up)).

In making his balancing argument, Martin relies on the advisory committee's notes to Federal Rule of Criminal Procedure 32.1. The relevant notes state that in revocation hearings, "the court should apply a balancing test at the hearing itself when considering the releasee's asserted right to cross-examine adverse witnesses." Fed. R. Crim. P. 32.1 advisory committee's note to 2002 amendment. It continues that the court should balance the individual's right to confrontation against the government's reason for not requiring confrontation. *Id.*

But neither those notes nor the rule itself requires a district court to conduct this balancing test on the record for the defendant to hear. And Martin does not cite to any binding authority from our court that requires a district court to expressly balance on the record—especially when a defendant has failed to object in the first place. Thus, we cannot say that the district court plainly erred.

## III.

For these reasons, we **AFFIRM** the district court's judgment.