IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

NO. 92-8478
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LYNN KIRSTIN WALLER ROGERS,
a/k/a Lynn Waller Rogers,

Defendant-Appellant.

_____

Appeal from the United State district Court for the
Western District of Texas
_____

(August 30, 1993)


Before KING and JOLLY, Circuit Judges, and PARKER[1], District Judge.

Per curiam:

Defendant-appellant Lynn Kirstin Waller Rogers (Rogers) pleaded guilty to possession with intent to distribute amphetamine/methamphetamine in violation 21 U.S.C. § 841 (a)(1). On appeal she challenges her sentence only, alleging that the district court erred in finding that over 500 grams of amphetamine/methamphetamine were attributable to her. Based on our determination that the district court's finding was not clearly erroneous, we affirm Rogers' sentence.

_____

[1] Chief Judge of the Eastern District of Texas, sitting by designation.

## STANDARD OF REVIEW

"A district court's findings about the quantity of drugs implicated by the crime are factual findings reviewed under the 'clearly erroneous' standard." *United States v. Rivera*, 898 F.2d 442, 445 (5th Cir. 1990). Under the 'clearly erroneous' standard, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

## FACTS

Thirteen people were indicted for alleged offenses related to the possession and distribution of amphetamine/methamphetamine as a result of an investigation by the Waco Police Department and the Drug Enforcement Administration from January 1988 through June 1991. Michael Royals was the head of the distribution scheme. He dealt with only four of the other indicted individuals directly, who in turn sold drugs to an ever widening and tangled system of drug dealers. Rogers was one of the four people in the tier below Royals, but dealt in less volume than others at that level. She was incarcerated on a state drug conviction from September 1987 to October 1989, and the government alleged that she began buying drugs from Royals in 1990.

The government used forty-four (44) different confidential informants (CIs) in the investigation, and over thirty search warrants were executed. The government relied on information

received from seven of those CIs to establish the drug amount attributable to Rogers. Rogers alleges that the following information that came into evidence through the testimony of Waco Police Officer Darryl Moore is not reliable:

| Date | Amount Rogers Possessed | Source |
|------|-------------------------|--------|
| 1988 or prior to Rogers' incarceration | 1/2 pound of amphetamine | CI# 20 |
| approx. 1/11/89 | 1/2 pound of amphetamine | CI# 21 |
| Fall 1990 | 1/2 ounce daily for 3-4 month -- 45 ounces | CI# 21 |
| 2/15/91 | 1/8 ounce of amphetamine | CI# 12 |
| 3/21/91 | 9.25 grams amphetamine | CI# 12 |
| 5/22/91 | 1 ounce of amphetamine | CI# 17 |

However, Rogers admitted possessing a maximum of one pound of amphetamine, which amount was corroborated by Royals who reported during his debriefing that he sold Rogers not more than a pound of amphetamine.

## DISTRICT COURT CONCLUSION

After Rogers' guilty plea, the U.S. Probation Office prepared her Presentence Report, in which the Probation Officer concluded that 2,196.82 grams of amphetamine were attributable to Rogers. The Probation Officer reached this conclusion by adding up the amounts reportedly witnessed by various confidential informants, 2.71 grams recovered pursuant to a search warrant, and approximately one pound (453.6 grams) alleged by co-defendant Michael Royals during his debriefing. Rogers objected to the computation of the drug amount on the grounds that much of the

3

amphetamine had been double counted and that much of the information relied upon by the Government was unreliable. The district court subtracted the 453.6 grams reported by Royals, because the Government could not establish that the drugs that Royals claimed he sold to her were not the same drugs that were reported by the CIs. The court found that 1700 grams were attributable to Rogers.

## CORROBORATION

Pursuant to § 1B1.1 of the Sentencing Guidelines, the first step in sentencing one convicted of violating 21 U.S.C. § 841(a)(1) is to determine the base offense level provided by § 2D1.1 of the Sentencing Guidelines. Several base offense levels are provided by U.S.S.G. § 2D1.1, depending on the amount of drugs attributable to the convicted person. The original base level offense calculated by the probation office was 28, based on the recommendation that 2.194 kilograms of drugs were attributable to Rogers. The district court's finding that 1700 grams were attributable to Rogers reduced the base level offense to 26 (between 500 grams and two kilograms of amphetamine). Rogers' contention is that the court should have found that no more than one pound (453.6 grams) of amphetamine was attributable to her, resulting in further reduction of the base level offense, and a corresponding decrease in the applicable guidelines.

For sentencing purposes, the district court may consider any relevant evidence "without regard to its admissibility under the rules of evidence applicable at trial, provided that the

4

information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3. More specifically, out-of-court declarations by an unidentified informant may be considered where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means. U.S.S.G. § 6A1.3 (citing *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978)). See also *United States v. Young*, 981 F.2d 180 (5th Cir. 1993). Rogers does not challenge, and Moore's testimony supports, the district court's implicit finding that there was good cause for nondisclosure of the identities of the CIs in this case.

The issue remaining for this court to determine is whether the information used to sentence Rogers was grounded in some indicia of reliability. The "some indicia of reliability" language has been interpreted by this Court to require that the facts used by the district court for sentencing purposes be reasonably reliable. *United States v. Shacklett*, 921 F.2d 580, 585 (5th Cir. 1991).

Rogers established at the sentencing hearing that it was not possible for CIs #20 and #21 to have seen her with drugs in her possession on the dates reported in 1988 and 1989 because she was incarcerated on those dates. In response, the government argues that, according to Moore's testimony, CI #20 specifically stated that he observed Rogers with the drugs before she went to prison and that the discrepancy in the dates of CI #21's report is not so large as to render the information unreliable, particularly when the informant, estimating the time frame years later, only approximated the date. Further, Rogers complains that the

5

government offered no specific corroboration of the amounts reported by the CIs; all that was offered was Moore's testimony regarding the general reliability of the CIs and other evidence of Rogers' drug activity.

In *United States v. Young*, 981 F.2d 180 (5th Cir. 1993) this court faced a similar situation where a defendant presented evidence that tended to rebut information provided by CIs whose identity was not disclosed. The government provided corroboration in the form of evidence obtained from their own investigation concerning the defendants' involvement in drug dealing and the CIs' past record of reliability, without specifically corroborating the drug amounts reported by the CIs. We noted in *Young* that the district court, although faced with a paucity of defendants' rebuttal testimony, halved the amount of drugs reported by the CIs to "tak[e] into account uncertainty and the possibility of exaggeration." *Id*. at 186.

This case presents a closer question than we faced in *Young*. The rebuttal testimony here clearly established that at least some portion of the CI reports were wrong. However, the discrepancy established did not impact directly on the report of approximately forty-five (45) ounces that CI #21 reported that Rogers sold to a codefendant in repeated small transactions in the Fall of 1990. In fact, Rogers' own version of the facts corroborated that most of her involvement occurred during this period. Much like *Young*, the extensive government investigation in this case corroborated many of the other details of the drug distribution scheme, but did not

6

establish the amount of drugs attributable to Rogers except through the challenged CI reports.  We find that on the record, viewed in its entirety, sufficient indicia of reliability accompanied the CIs' reports that the district court was justified in relying on them to determine the quantity of drugs with which Rogers had been associated without corroboration of the specific amounts alleged. See also *United States v. Windham*, 991 F.2d 181 (Fifth Cir. 1993).

## DUPLICATION OF DRUG AMOUNT

Rogers argues that the amount of drugs reported by the CIs duplicated the amount reported by Royals.  The district court recognized that danger and subtracted the amount Royals reported from the total.  Rogers suggests, without authority, since the government did not present evidence of any drug source other than Royals, the court should have believed Royals instead of the CIs because he is a known person who is subject to cross examination. Rogers also argues that the various CIs could have reported the possession of the same quantity of drugs more than once.  These speculations do not support a holding that the lower court's finding was clearly erroneous.

## RELEVANT CONDUCT

Finally, Rogers argues that the district court erred in considering the drug quantities reported by CIs #20 and #21 prior to 1988, because "in the unlikely event" they did see Rogers with drugs, such conduct would be outside the scope of relevant conduct for the offense of conviction.  In effect, Rogers argues that the conduct had to occur, if it occurred at all, before 1988, and that

pre-1988 drug sales were not part of the conspiracy alleged in the indictment. She also complains that the district court made no finding as to whether the conspiracy existed in 1987.

When calculating quantities of drugs upon which to base a sentence, quantities not specified in the indictment, if part of the same scheme, course of conduct, or plan, may be used to determine the base offense level. *Young*, 981 F.2d at 185. The Presentence Report (PSR) concluded that the conduct in question constituted relevant conduct. While Rogers objected to the inclusion of the pre-1988 quantities, she offered no evidence that they were not part of the same course of conduct. The district court was therefore free to adopt the PSR without further inquiry. *United States v. Rodriguez*, 897 F.2d 1324, 1327-28 (5th Cir. 1990) (Where defendant disputes facts stated in the PSR, but presents no rebuttal evidence, the district court has discretion to adopt the PSR's facts without more specific inquiry or explanation, provided that those facts had an adequate evidentiary basis.)

## CONCLUSION

We cannot say that based on all of the evidence available for consideration that the district court's determination that 1700 grams of amphetamine were attributable to Rogers was clearly erroneous.

We AFFIRM.

8