**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Luther M. VINE, Defendant–Appellant.**

**No. 95–30090**
**Summary Calender.**

United States Court of Appeals,
Fifth Circuit.

Aug. 11, 1995.

---

Lawrence K. Benson, Jr., Stephen A. Higginson, Asst. U.S. Attys., New Orleans, LA, for U.S.

Scott R. Bickford, John R. Martzell, Martzell & Thomas, New Orleans, LA, for Luther M. Vine.

Before DAVIS, JONES and BENAVIDES, Circuit Judges.

**PER CURIAM:**

Defendant–Appellant Luther Vine ("Vine") appeals the sentence imposed after his guilty plea to using a communication facility in relation to a felony drug offense in violation of 21 U.S.C. § 843(b). The issue on appeal is whether the district court erred when it calculated Vine's sentence using a negotiated quantity of drugs, when such amount was supplied by government agents. Finding no reversible error, we AFFIRM.

## FACTS AND PROCEDURAL HISTORY

Vine pleaded guilty to a superseding indictment which charged him with two counts of using a communication facility in relation to a felony drug offense. The Presentence Report ("PSR") grouped the two counts pursuant to U.S.S.G. § 3D1.2 and applied § 2D1.6, which mandates that the amount of drugs negotiated via the communication facility be used to reach a defendant's base offense level. At the sentencing hearing, David Blackwell ("Blackwell"), a special agent with the U.S. Immigration Service assigned to the Drug Enforcement Administration ("DEA"), testified as follows.

The DEA began an investigation in April 1993 of Bobbie Finch, Bobbi Holloman, and Cecil Morrison. As the case progressed it targeted Keith Fontenot and Vine as well. The investigation began after some of these individuals contacted Ray Cutrer ("Ray"), an informant for the DEA, to buy methamphetamine and to create a clandestine lab. Blackwell's role was to be the "money man" to facilitate the manufacture of the methamphetamine in the lab.

Blackwell met Vine in late January 1994. Vine and two others contacted the informant because they needed a "cook" to convert two pounds or two gallons of methamphetamine oil into a useable product. Blackwell informed Vine that a group of unnamed people with whom he was involved was in the process of creating a lab that would be capable of producing a quantity of methamphetamine. Vine stated that he had a contact, Fontenot, who owned a chemical company and that he could furnish all the chemicals that they needed in addition to glassware. In return,

Vine would receive half of the finished product that came out of the lab.

Blackwell furnished Vine with two lists of chemicals and the amounts needed to manufacture methamphetamine, with each list representing a different approach to manufacturing the drug. Using the Ephedrine method, 12 pounds of methamphetamine would be produced; using the P–2–P method, 18 pounds of methamphetamine would be produced.

On cross-examination, the defense established that Vine never met with Ted and Bobbie Finch about the lab. Counsel also established that Vine never furnished any of the chemicals on the lists given to him, nor did he supply the glassware.[1]

Diane Cutrer ("Diane"), a DEA informant and Ray Cutrer's wife, testified at the sentencing hearing as follows. On February 12, 1994, she was working as an informant with the DEA. She and her husband met with Vine in their home to discuss manufacturing methamphetamine. Ray gave Vine the lists of chemicals and told him that 12 to 19 pounds of methamphetamine would be produced. A videotape of the meeting was played for the court which showed Ray telling Vine that 18 pounds of methamphetamine would be produced.

Vine argued at the sentencing hearing that, because government agents supplied the amount of drugs to be produced, that amount could not be used to sentence him. The court rejected the argument, stating that Vine, as evidenced by the videotape, acquiesced to the amount of methamphetamine that was to be produced.

The court applied § 1B1.3 and looked to the testimony of Blackwell, Diane, and the videotape, to find that Vine was a knowing participant in a conspiracy, the object of which was to make at least 12 pounds of pure crystal methamphetamine. The court also referred to Vine's guilty plea and noted that the factual basis was read in full at his rearraignment and that Vine did not dispute the following facts:

> Vine[ ] continued to meet with Agent Blackwell concerning the clandestine lab,

and during these meetings, Agent Blackwell disclosed to Vine that other persons were involved in the lab and intended to participate in the production of methamphetamine once the lab was in operation. Agent Blackwell represented to Vine that the lab would be capable of producing 12 pounds of methamphetamine.

> On February 5, 1994, Vine delivered to Agent Blackwell chemicals and equipment which he understood would be necessary in order for the lab to operate.

The court sentenced Vine to 96 months of imprisonment, representing two consecutive 48–month terms on each count, with one year of supervised release, and imposed a fine of $15,000 to $150,000. Vine appeals the district court's decision that 12 pounds would be the figure upon which his sentence would be based.

## LAW AND ARGUMENT

■ "A district court's findings about the quantity of drugs implicated by the crime are factual findings reviewed under the 'clearly erroneous' standard." *United States v. Rivera*, 898 F.2d 442, 445 (5th Cir.1990). Under this standard, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *United States v. Rogers*, 1 F.3d 341, 342 (5th Cir.1993) (citation omitted).

Section 2D1.6 governs the offense level applicable to the use of a communication facility to commit a drug offense. The section's commentary references commentary to § 2D1.1 to determine the scale of the offense. The commentary to § 2D1.1 provides that, when an offense involves negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount, except the court shall exclude any amount it finds that the defendant did not intend to produce and was not reasonably

---

1. Vine did, however, produce chemicals that were not on the lists.

**110**

capable of producing. U.S.S.G. § 2D1.1, comment. (n. 12).

 Vine first contends that he should not have been sentenced under § 1B1.3 for the conduct of his co-conspirators because he met with only one of them and because whether 12 pounds of methamphetamine was reasonably foreseeable was not within his personal knowledge. We find this argument to be meritless. Evidence exists in the record showing that Vine personally knew that the object of the conspiracy was to produce 12 pounds of methamphetamine.

 Vine next contends that, because he was unable to procure the chemicals on the lists supplied by the government agents, he lacked the requisite intent and ability to produce the negotiated amount as required by the Commentary of Section 2D1.1. *United States v. Hendrickson*, 26 F.3d 321 (2d Cir. 1994), upon which Vine relies, held that the key criterion is the defendant's intent, *id.* at 334. Here, there is evidence in the record that Vine intended to participate in a conspiracy to produce 12 pounds of methamphetamine. The district court stated that "[t]here is no doubt in my mind . . . that the defendant . . . agreed to supply chemicals to produce 12 to 18 pounds of methamphetamine and that he was a knowing participant to produce at least 12 pounds of methamphetamine." The fact that Vine failed in supplying the chemicals necessary to produce 12 pounds is not evidence that Vine did not intend to supply the needed chemicals or that he would not be able to do so in the near future.

 Finally, Vine maintains that the government agent's supplied quantity cannot constitute the negotiated amount. Citing *Hendrickson*, 26 F.3d at 333, Vine argues that the agreement must have been with an individual other than a government agent. In *Hendrickson*, there was no clear evidence that the defendant met with anyone other than government agents. *Id.* at 339–41. Here, Vine met with Fontenot concerning the lab. Further, the Fifth Circuit has upheld a defendant's sentence based on the government's choice as to amount or quantity. *United States v. Richardson*, 925 F.2d 112, 117 (5th Cir.), *cert. denied,* 501 U.S. 1237, 111 S.Ct. 2868, 115 L.Ed.2d 1034 (1991).

## CONCLUSION

For the foregoing reasons, the district court is AFFIRMED.