# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-51113

United States Court of Appeals
Fifth Circuit

**FILED**
October 5, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

XAVIER CARDONA; MICHAEL CARDONA,

Defendants - Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 2:14-CR-46

Before DAVIS, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:*

Xavier and Michael Cardona ("Xavier" and "Michael") appeal their convictions for conspiracy to possess with intent to distribute cocaine and their respective sentences. For the reasons set forth below, we AFFIRM both the defendants' conspiracy convictions as well as their sentences.

I

A jury convicted defendants of conspiracy to possess with intent to distribute cocaine. Michael was also found guilty of two substantive counts of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-51113

possession with intent to distribute. The district court calculated Xavier's Sentencing Guidelines range as 235 to 293 months imprisonment, but granted him a downward variance of 216 months. Michael was sentenced to a within-guidelines term of 216 months imprisonment for each of the three counts in the indictment to be served concurrently.

At trial, the government presented multiple witnesses who testified to having purchased various quantities of cocaine from either Xavier or Michael or both. Michael and other dealers the defendants employed would often deliver the drugs to purchasers, but many transactions also took place at Xavier's auto-detailing shop. On more than one occasion, witnesses saw defendants display weapons in connection with their drug business and in an effort to intimidate buyers or dealers they employed. DEA agent Juan Silva testified that he monitored two controlled "buy-walk" transactions between Michael Cardona and Bernabe Olivas, a former member of the Eagle Pass Mexican Mafia, in which Olivas purchased a combined $2,200.00 worth of cocaine. When the FBI executed search warrants at Michael and Xavier's residences, they found $26,520.00 and $136,275.00, respectively, in cellophane-wrapped stacks of cash. Agents also found weapons and some cocaine at both residences. A search of Xavier's auto shop revealed almost no legitimate business records, and agents found a suspicious accounting book that was later confirmed by a forensic examiner to be an illicit sales ledger.

While in custody, Michael was caught trying to swallow a document in an attempt to prevent custodial authorities from seizing it. The note, written in Spanish, directed the unnamed recipient to facilitate the creation of false receipts to "help [him] out." Xavier was found in possession of a similar note containing information about vehicles and prices. During a recorded phone call between Xavier and a family member, a cooperating source read a written

No. 16-51113

statement disclaiming any knowledge of Xavier's criminal activity. The source later told authorities that Xavier had coerced him into reading the statement, warned the source that he would be back in custody following the trial, and stressed that he would know whether the source had testified against him.

Defendants' sentencing hearing lasted over four hours. In calculating the volume of cocaine for which defendants were responsible, the district court tallied quantities derived from various sources listed in the PSR: (1) amounts provided to trial witnesses; (2) amounts provided to unnamed confidential and cooperating individuals; (3) the amount purchased in the controlled "buy-walks" between Michael and Bernabe Olivas; (4) the amounts found in Michael and Xavier's respective residences; and (5) the volume equivalent of the cash seized at defendants' residences.[1] The amounts totaled 6.7453 kilograms. Defendants' objected to the inclusion of the amounts sold to confidential witnesses as well as the amount derived from the cash conversion.

The district court found that Xavier qualified for a two-level sentencing enhancement under U.S.S.G § 2D1.1(b)(15)(D) for witness intimidation and/or obstruction of justice.[2] Michael received a two-level sentencing enhancement under U.S.S.G. § 2D1.1(b)(15)(D) for obstruction of justice[3] and a two-level enhancement under U.S.S.G. § 2D1.1(b)(2) for a credible threat of violence. The

---

[1] The PSR converted the $26,520.53 found in Michael's residence and the $136,275.00 found in Xavier's residence into roughly 2.6 kilograms of cocaine.

[2] The two-level sentencing enhancement under § 2D1.1(b)(15) is also applicable if "the defendant committed the offense as part of a pattern of criminal conduct engaged in as a livelihood." U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(b)(15)(E) (U.S. SENTENCING COMM'N 2015). The PSR lists this as an alternative basis for applying the two-level enhancement, and Xavier disputes that Section (E) applies to him in his brief, but it is clear from the sentencing record that the district court relied primarily on Section (D) as the basis for the enhancement.

[3] In their briefs, both Michael and the government address Michael's obstruction of justice enhancement under § 3C1.1. The PSR and the record, however, indicate that the enhancement was applied under § 2D1.1(b)(15)(D).

3

No. 16-51113

PSR recommended Xavier receive an adjusted offense level of 42, but the district court reduced the total to 38 after sustaining Xavier's objection to the leadership enhancement. Xavier's Sentencing Guidelines range was 235 to 293 months imprisonment. The district court granted Xavier a downward variance and sentenced him to 216 months imprisonment. The district court concluded Michael had a total offense level of 36 and sentenced him within the guidelines range to 216 months for each offense charged to be served concurrently. Defendants appeal their convictions and their sentences.

## II

Defendants contend that the evidence presented at trial was insufficient to establish that they participated in a conspiracy to violate federal narcotics laws. This contention is without merit. Because defendants failed to move for a judgment of acquittal under Federal Rule of Criminal Procedure 29 at the close of trial, our review is limited to determining whether defendants' convictions amount to "manifest miscarriage[s] of justice." *United States v. Delgado*, 256 F.3d 264, 274 (5th Cir. 2001). In doing so we merely ask whether the record is "devoid of evidence pointing to guilt." *United States v. Robles-Pantoja*, 887 F.2d 1250, 1254 (5th Cir. 1989). The evidence presented at trial was overwhelming and more than sufficient to demonstrate that the defendants entered into an agreement to distribute cocaine. Accordingly, defendants' convictions are AFFIRMED.

## III

Defendants raise two overarching objections to the district court's sentencing calculation. First, defendants claim that the district court erred in including the amount of cocaine attributable to transactions with confidential witnesses and the amount converted into kilograms of cocaine from the cash found in their residences in the total amount of relevant conduct. Second,

No. 16-51113

Michael argues that the district court improperly imposed a two-level sentencing enhancement under § 2D.1(b)(2) of the Sentencing Guidelines for threat of violence and under § 3C1.1 for obstruction of justice. Similarly, Xavier claims that the district court erred in applying a two-level sentencing enhancement for obstruction of justice under § 2D1.1(b)(15)(D) or for committing and offense as part of a pattern of criminal conduct engaged in as a livelihood under § 2D1.1(b)(15)(E).

We review the district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008). Factual findings at sentencing need only be determined by a preponderance of the evidence. *See United States v. Mergerson*, 4 F.3d 337, 343 (5th Cir. 1993).

IV

The district court's calculation of the quantity of drugs to be included in the relevant conduct is a factual determination. *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005). In making its determination, the district court is entitled to consider "any information that has sufficient indicia of reliability to support its probable accuracy," *United States v. Huskey*, 137 F.3d 283, 291 (5th Cir. 1998), and may estimate the total quantity based on a defendant's distribution patterns, law enforcement approximations, and hearsay, *see Betancourt*, 422 F.3d at 246-47. "Generally, a PSR bears sufficient indicia of reliability to permit the sentencing court to rely on it at sentencing," and the sentencing court may adopt the PSR absent competent rebuttal evidence. *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009). Out-of-court testimony by confidential informants "may be considered where there is good cause for the nondisclosure of their identity and there is sufficient

corroboration by other means." *United States v. Rogers*, 1 F.3d 341, 343 (5th Cir. 1993) (citing U.S.S.G. § 6A1.3).

Defendants argue that confidential witness testimony regarding additional drug sales was insufficiently reliable. They also contend that the district court erred in failing to make a specific finding regarding the reason for non-disclosure of the witnesses' identities.[4] In crediting the witnesses' testimony, the district court relied on information outlined in the PSR, which included the identity of the distributor, dates, times, drug amounts, and other contextual details of the transactions. As the district court noted, the details provided by the confidential witnesses were entirely consistent with those provided by witnesses at trial. Though the district court did not make an explicit finding with respect to the government's nondisclosure of witness identities, the reason for nondisclosure is abundantly clear in the record. Defendants had extensive contacts with the Mexican Mafia, possessed multiple firearms, and trial witnesses testified that they feared retaliation for their cooperation with authorities. Accordingly, the district court's implicit finding of good cause for nondisclosure of the unidentified witness identities and its determination that the testimony was sufficiently corroborated was not clearly erroneous.[5]

---

[4] There is no evidence in the record that defendants requested the sentencing court make an explicit determination regarding the reasons for the government's nondisclosure.

[5] Michael also insists that the district court's partial reliance on the hearsay testimony of confidential witnesses to determine the drug quantity violated his Fifth Amendment right to due process as well as his confrontation right under the Sixth Amendment. Though Michael admits this argument is effectively foreclosed by this Circuit's precedent in *United States v. Beydoun*, 469 F.3d 102 (5th Cir. 2006)—which declined to extend the procedural protections afforded to defendants at trial under *Crawford v. Washington*, 541 U.S. 36 (2004) to sentencing proceedings—he urges us to reconsider. We decline to do so here. Michael's independent argument under the Due Process Clause of the Fifth Amendment is merely a reformulation of his complaints regarding the reliability of the unidentified witness testimony. Because we agree with the district court that the testimony was sufficiently reliable, we need not address this argument further.

Defendants also object to the district court's conversion of the cash seized at their residences into quantities of cocaine. Xavier insists that the wrapped stacks of cash came from legitimate sources, namely a personal injury settlement, his auto business, and gambling winnings. Michael argues that the district court was required to make an explicit finding that either (a) there was no drug seizure, or (b) the amount seized did not reflect the scale of the charged offense, before converting the cash to drug quantities. *See United States v. Henderson*, 254 F.3d 543, 544 (5th Cir. 2001) (Garza, J., concurring). He also contends that the cash conversion may have "double counted" quantities derived from confidential witnesses.

The district court dealt with Xavier's objection to the cash conversion at length. Though there was evidence Xavier earned some legitimate income, the amount was minimal, and Xavier's ex-spouse told authorities that the proceeds from his personal injury settlement had been spent. Furthermore, the evidence tending to show the cash was from drug sales was substantial. Both the testimony presented at trial and the information in the PSR established that Xavier and Michael sold large quantities of cocaine for over a decade.[6] The district court analyzed Xavier's tax records and found no indication of significant cash savings. Noting also the lack of legitimate business records at the auto detailing shop, the drug ledger, and the cellophane wrapping on the stacks of cash, the district court reasonably concluded that Xavier's alternative explanations were not credible. The district courts' finding that the cash found was from cocaine sales was not clearly erroneous.

Michael's objections to the cash conversion are similarly unavailing. As to his first objection, because Michael failed to object to the district court's

---

[6] Bernabe Olivas testified at trial that he had known Michael for several years and had never seen him work any kind of legitimate job.

procedural oversight during the sentencing hearing, our review is for plain error. *See, e.g.*, *United States v. Lopez-Velasquez*, 526 F.3d 804, 806 (5th Cir. 2008). Though the district court did not make the determination explicitly, the evidence in the record amply supports the conclusion that the quantity of drugs seized did not reflect the scale of the offense. The district court's failure to make this finding overtly before converting the cash to cocaine quantities was not plainly erroneous. The district court addressed Michael's second objection—the risk of double counting—in depth at the sentencing hearing. As the district court noted, the transactions described by the unidentified witnesses occurred several years before the cash was seized. Furthermore, the high value of the wrapped stacks of cash was not consistent with having come from the type of smaller-quantity buys the confidential witnesses participated in. The district court's factual finding that the conversion did not constitute double counting under these circumstances does not constitute clear error.

V

Lastly, defendants object to the district court's application of various sentencing enhancements. Turning first to defendants' contention that the facts do not support the sentencing enhancements for a credible threat of violence, witness intimidation, obstruction of justice, or committing an offense as a part of a pattern of criminal conduct engaged in as a livelihood, we find defendants' protests unavailing.

In applying Michael's enhancement for making a credible threat of violence under § 2D1.1(b)(2), the district court credited Bernabe Olivas' testimony that he witnessed Michael get angry with an associate and demand that he return with "either . . . the drugs or the money" before handing him a pistol. Combined with the evidence introduced at trial tending to show defendants' potential for violence, including but not limited to witness

testimony that defendants' motto was "we're not going to fight anybody . . . we're just going to kill them in case something is set to go down," the incident Olivas witnessed can reasonably be classified as a credible threat of violence. Additionally, Michael's attempt to pass along a message from prison directing someone to manufacture legitimate receipts in order to "help [him] out," followed by an attempt to swallow the incriminating note, easily qualifies as obstructive behavior under § 2D1.1(b)(15)(D).

The district court's finding that Xavier engaged in witness intimidation and obstruction of justice under § 2D1.1(b)(15)(D) is similarly reasonable. A cooperating source told the FBI that Xavier coerced him into making an exculpatory statement during a recorded phone call. Xavier then warned the source that "he [would] know" if the source chose to testify against him and that Xavier was "going to come back here." It was not clearly erroneous for the district court to conclude that Xavier's actions constituted witness tampering and obstructive conduct warranting a two-level sentencing enhancement.

With respect to the application of § 2D1.1(b)(15)(D), however, we note that the government concedes this section was inapplicable because the district court sustained defendants' objection to the application of an aggravating role enhancement under § 3B1.1—a prerequisite for the application of § 2D1.1(b)(15)(D). *See* U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(b)(15) (U.S. SENTENCING COMM'N 2015). Defendants did not make this specific objection during sentencing nor did they raise it in their briefs, and this objection is likely waived. *See U.S. v. Scroggins*, 599 F.3d 433, 446-48 (5th Cir. 2010). Even assuming, however, that the issue is subject to plain error review, we find that defendants have not demonstrated the error had "a serious effect on the fairness, integrity, or public reputation of judicial proceedings." *United States v. Baker*, 538 F.3d 324, 332 (5th Cir. 2008). As the government notes,

No. 16-51113

the same conduct that constituted obstruction under § 2D1.1(b)(15)(D) would almost certainly have qualified defendants for the two-level obstruction of justice enhancement under § 3C1.1.[7] Both Xavier and Michael's PSR specifically stated that an adjustment for obstruction of justice under § 3C1.1 was not applied "due to the fact that the defendant received an enhancement under [] § 2D1.1(b)(15)(D)." Accordingly, the district court's application of a two-level enhancement was not plainly erroneous.

## VI

We AFFIRM defendants' convictions and their sentences.

---

[7] Contrary to Michael's contention that the "alleged obstruction did not pertain to 'the instant offense of conviction,'" as required by § 3C1.1, we believe that attempting to falsify records in order to prove seized cash was legitimate income as opposed to proceeds from drug sales is highly relevant to the offense charged.