NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0197n.06

No. 20-5354

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 16, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JUAN FERNANDA BICKERSTAFF, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:      ROGERS, BUSH, and LARSEN, Circuit Judges.

ROGERS, Circuit Judge.

Juan Fernanda Bickerstaff pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). When sentencing Bickerstaff, the district court applied a four-level enhancement, concluding that Bickerstaff used or possessed his firearm in connection with the felony offense of aggravated assault. The court relied in part on two 911 calls in which the caller reported a man matching Bickerstaff's description as threatening her and her family. Bickerstaff appeals, arguing that the district court violated Bickerstaff's due process rights by applying the sentencing enhancement because it relied on hearsay statements that he contends are unreliable. Because the record supports a finding by a preponderance of the evidence that Bickerstaff committed aggravated assault, the district court did not abuse its discretion in applying the enhancement.

The factual summary that follows, prepared by the Government, was the basis for the guilty plea:

> On or about March 23, 2016, Knoxville Police Department Officers responded to a report of an aggravated assault. The victim described the suspect as a black male with dreadlocks and stated that the suspect had waved a revolver in the air and threatened to shoot her. The victim informed the officers that the suspect had left in a white Ford Taurus. Officers canvas[s]ed the area, and quickly observed a white Ford Taurus in the back of the complex. As the officer parked his vehicle, a black male matching the victim's description of the suspect was observed entering the Taurus. A traffic stop was conducted, and the defendant, Juan Fernanda Bickerstaff, was detained and advised of the situation.
>
> During a search of the vehicle, officers located a loaded Titan Tiger .38 revolver in the trunk. The defendant was detained in the back of a police car and Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Task Force Officer J.D. Sisk responded to the scene. The officer read the defendant his Miranda rights, and the defendant agreed to speak with him. The defendant admitted that the Ford Taurus belonged to him and his wife. He admitted to being a convicted felon. He said that he purchased the firearm that was found in the trunk about three years prior for $100. He admitted he had the gun in his hand when he got out of the car to approach the victim but stated that he did not wave it around or point it at anyone.
>
> The defendant has been previously convicted in federal court for possession of a firearm by an unlawful user of any controlled substance. At the time the defendant possessed the firearm and ammunition, he knew of that prior felony conviction and that it was punishable by more than one-year of imprisonment.

Bickerstaff did not object to this summary, read in full at the plea hearing, even when it was incorporated into the Pre-Sentence Report. Bickerstaff has, however, consistently denied that he committed the elements of assault or aggravated assault under Tennessee law.

Bickerstaff was arrested by the police and charged with aggravated assault under Tenn. Code Ann. § 39-13-102. The assault charge was dismissed six months later, but in April 2019, Bickerstaff was indicted federally for felony gun possession. Bickerstaff pleaded guilty. In preparation for sentencing, the probation office calculated Bickerstaff's offense level at 12 (a base offense level of 14 with a two-point reduction for acceptance of responsibility) and a Guidelines range of 15 to 21 months' imprisonment. The Government objected, arguing that there should be a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because Bickerstaff's gun possession

was in connection with the felony offense of aggravated assault. The probation office responded in an addendum to the PSR, explaining that it was not revising its report because it was "unclear if there was an actual Aggravated Assault, during which the victims may have felt threatened by the defendant's possessing a firearm." The PSR addendum stated that Bickerstaff denied he was in an altercation and that Bickerstaff claimed no victim at the scene identified him as the individual involved in the alleged altercation. The report further noted that Bickerstaff had also claimed his firearm was not visible to anyone else and that the charge of aggravated assault was ultimately dismissed. The probation office concluded that the application of the enhancement "is a matter better determined by the Court" once the Government proves, by a preponderance of the evidence, that Bickerstaff committed the aggravated assault.

At the sentencing hearing, the Government called no witnesses but relied on recordings of the two 911 calls, video recordings of Bickerstaff's backseat confession, and the affidavit of the arresting officer. The recordings of the two 911 calls were less than clear, as the Government admitted. What could be deciphered, however, was that the 911 caller sounded to be in a panicked state as she asserted that she needed a police officer because "there's a guy with a gun" who was threatening her nephew and threatening her family. Initially the caller denied knowing the individual in question, but she called a second time as the perpetrator drove away and explained that her daughter and the individual with the gun (or someone related to him) had previously gotten into a fight. She again said that the individual with the gun had put the gun in her face and screamed that he would shoot everyone and threatened her daughter.

The Government also played video clips of Bickerstaff being questioned in the back of the police cruiser after receiving *Miranda* warnings. Bickerstaff admitted he had a gun and indicated he had gone to see the people who had "beat [his] wife half to death." He admitted that when he

stepped out his car, he had his gun in his hand and, in his words, "I had my hand beside my pocket."[1] Bickerstaff denied pointing his gun at anyone, but when law enforcement asked him what he was planning on doing with the gun, Bickerstaff responded that he did not know and that he had been thinking of his wife.

In response to the audio and video clips, Bickerstaff's trial counsel pointed out that there was another "[B]lack individual[] with long dreadlocks" in the car, and that the victims never positively identified Bickerstaff. Trial counsel acknowledged that hearsay evidence may be used in sentencing but suggested that the reliance on the calls could violate Bickerstaff's Confrontation Clause or due process rights. He further argued that there was "still not enough identifying information in those 9-1-1 calls to pinpoint . . . Mr. Bickerstaff" as the perpetrator and that the Government failed to meet its burden by a preponderance of the evidence, citing the fact that the state assault charges were ultimately dismissed.

After reviewing the evidence, the district court ultimately sustained the Government's objection and increased the offense level by four, finding that:

> In this case, the defendant has admitted that he was at the scene. The defendant admits that he had the gun involved in this crime. The defendant admits that he had the gun in his hand. The 9-1-1 caller was afraid of [im]minent bodily injury. The witnesses described the gun as a revolver. They could not have described the gun as a revolver unless the defendant displayed the gun. Witnesses on the phone call were highly excited, highly agitated, and obviously afraid.

The district court then applied a three-level reduction for acceptance of responsibility, bringing the total offense level to 15, which corresponded to a Guidelines range of 24 to 30 months' imprisonment. The prosecution requested 27 months' imprisonment, arguing that Bickerstaff had an "extensive criminal history," which was not reflected in his criminal history score because some

---

[1] It is not entirely clear that Bickerstaff said "beside my pocket" as opposed to "by my pocket" or "in my pocket." Our repeated listening to that excerpt leads us to the conclusion that Bickerstaff most likely stated, "I had my hand beside my pocket."

of the incidents were older, but that Bickerstaff still had "a pattern of disorderly conducts, resisting arrests, assaults[,] things of that nature." Bickerstaff sought a downward variance to six months' imprisonment and six months in a halfway house with a term of supervised release. He introduced a letter from the jail at which he was detained to show that he had no disciplinary issues while he was being treated. Bickerstaff addressed the court, apologizing for his conduct the night he was arrested and explaining that he was not on his medication the night of the incident. The court sentenced Bickerstaff to 24 months' imprisonment. The court concluded the hearing by commenting that it would have been helpful to have had a transcript of the 911 calls or for the Government to have arranged for the witnesses to testify but noted that it was "satisfied that . . . [it] correctly ruled in this matter. It is obvious . . . that the defendant needs help." Bickerstaff now appeals the district court's application of the four-level enhancement for using or possessing a firearm in connection with aggravated assault.

The ultimate issue on appeal is whether the district court clearly erred with respect to its finding by a preponderance of the evidence that Bickerstaff had used his firearm to commit Tennessee aggravated assault. Under Tennessee law, a person commits aggravated assault if he "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury" and that assault "involved the . . . display of a deadly weapon." Tenn. Code Ann. §§ 39-13-101(a)(2), 39-13-102(a)(1)(A)(iii).[2] Thus there are only two substantial sub-issues on appeal: whether the district court clearly erred (1) in finding that Bickerstaff knowingly caused another to reasonably fear imminent bodily injury or (2) in finding that his weapon was "displayed." While Bickerstaff suggested to the district court that there was not sufficient evidence that Bickerstaff was properly

---

[2] Although the state complaint did not provide a specific subsection under § 39-13-102, it appears that § 39-13-102(a)(1)(A)(iii) is the only applicable provision because the other subsections require seriously bodily injury, strangulation, or death, none of which was alleged to have occurred here.

identified, it is compellingly clear from his videotaped backseat confession that he was the person with a gun making threats, and that the gun was the one found in his car, i.e., the one for which he was convicted of possession, as required by U.S.S.G. § 2K2.1(b)(6)(B). Moreover, the fact that the Tennessee aggravated assault charge was dropped says little about whether the charge could have been sustained on a more-probable-than-not basis. In any event, prosecution of the connected felony offense is not required for the application of the Guideline provision. *See* U.S.S.G. § 2K2.1, cmt. n.14(C).

First, the court did not clearly err in finding that Bickerstaff knowingly caused another to reasonably fear imminent bodily injury. The district court credited the statements of the 911 caller that she was afraid of imminent bodily injury, and the court found that "[w]itnesses on the phone call were highly excited, highly agitated, and obviously afraid." This evidence supported the element of knowingly causing fear of imminent bodily injury. The caller sounded distressed as she told the police that she needed an officer "right now" and that the perpetrator was "threatening *everybody* with the gun." On her second call, she told the police that he was "screaming that he's going to shoot everyone; he's killing everybody" and that he put the gun "in [her] face and [her] husband's face" and was "threatening [her] daughter." Furthermore, when Bickerstaff was questioned by law enforcement, he did not deny that he may have contemplated shooting the victims. The hostile relationship between Bickerstaff and the victims further supports a finding that he knowingly caused fear of bodily injury.

It is true that the district court misstated at one point the *mens rea* standard to include recklessness, and it did not specifically make a finding that Bickerstaff intentionally or knowingly caused another to reasonably fear imminent bodily injury, as required under the statute. *See* Tenn. Code Ann. §§ 39-13-101(a)(2), 39-13-102(a)(1)(A)(iii). But the district court's findings in general

are ample to show knowing causation.  Such a discussion is sufficient even where the district court

has misstated the law.  *See United States v. Caseslorente*, 220 F.3d 727, 736 (6th Cir. 2000); *see

also United States v. Canestraro*, 282 F.3d 427, 431 n.1 (6th Cir. 2002).  Furthermore, throughout

the hearing, the prosecution contended that that Bickerstaff acted intentionally, and the court

concluded the hearing by saying it was satisfied that it "correctly ruled."[3]

Bickerstaff's primary argument on appeal is that the 911 call evidence was not admissible

because it was insufficiently supported hearsay and that without it there was nothing left to show

the requisite intent.  But the law is clear, whether as a constitutional matter or otherwise, that:

> In determining the relevant facts, sentencing judges are not restricted to information
> that would be admissible at trial.  Any information may be considered, so long as
> it has "sufficient indicia of reliability to support its probable accuracy."  Reliable
> hearsay evidence may [] be considered.  Out-of-court declarations by an
> unidentified informant may be considered "where there is good cause for the
> nondisclosure of his identity and there is sufficient corroboration by other means."
> Unreliable allegations shall not be considered.

*United States v. Silverman*, 976 F.2d 1502, 1504 (6th Cir. 1992) (en banc) (emphasis omitted)

(citation omitted); *see also* U.S.S.G. § 6A1.3(a) (Policy Statement).

Here, there was plenty to render the hearsay reliable.  The statements were made by an

identified witness, not an unidentified informant.  The circumstances were largely confirmed by

the defendant's own recorded confession, in which Bickerstaff admitted that he approached the

victims with a gun.  Bickerstaff's own account—along with the recovered gun and police

investigation—are more than enough to supply the required indicia of reliability.  The 911 caller

indicated that a Black man with dreadlocks threatened her and her family by waving a gun, which

---

[3] The district court's reasoning regarding sentencing included the statement that it was "obvious . . . that the defendant needs help."  We do not address the question of whether this comment might show a violation of the Sentencing Reform Act, 18 U.S.C. § 3582(a), which "precludes federal courts from imposing or lengthening a prison term in order to promote a criminal defendant's rehabilitation," *Tapia v. United States*, 564 U.S. 319, 321 (2011).  Bickerstaff does not make such an argument.

she later identified as a revolver. Bickerstaff had a motive to target the caller and her family, and he admitted he got out of the car with his gun and approached the victims with a gun.

True, Bickerstaff's account did not corroborate each detail in the 911 calls, but it did not need to. Corroborating evidence need not address each specific claim or be exhaustive to be considered sufficient. *United States v. Armstrong*, 920 F.3d 395, 399 (6th Cir. 2019). "Even under the (slightly) elevated standard for relying on hearsay from a confidential informant" (not at issue here), a "district court can reasonably corroborate enough of the information to make a *general* finding about the informant's reliability." *Id.* at 398–99 (emphasis added) (citing *United States v. Rogers*, 1 F.3d 341, 344 (5th Cir. 1993)). In *Armstrong*, for instance, we upheld the district court's sentencing enhancement, which was based on the amount of heroin the defendant had sold. *Id.* at 396. The court relied on an informant's out-of-court statement that "she purchased about one gram of heroin from Armstrong 70 times over eighteen to twenty-four months." *Id.* at 397. The district court found the statement to be reliable based on the testimony of an officer who had handled the informant and, relying on the informant's transaction history with the defendant, had "arrang[ed] three transactions, each for about a gram," which "went off without a hitch." *Id.* at 398–400. We rejected the defendant's argument that the government did not sufficiently corroborate the specific claim that the informant had made 70 purchases because the informant had provided enough details to be credited. *Id.* at 399–400. Thus, the fact that there is nothing that specifically corroborates the caller's claim that Bickerstaff was waving his gun is not enough to render the caller's statements unreliable.

The caller's statements, moreover, were supported by consistent hearsay from the initial 911 caller and an additional witness during the police investigation. One of the responding officers swore as follows:

> [In responding to a call with another officer, we were advised by the named complainant/victim about] "a Black male with dreads that had [come] by her apartment multiple times waving a gun in the air and threatening to shoot her." . . . . Once the scene was secure, I spoke with [two named victims] again. Both stated the defendant showed back up pointing a handgun at them [and] stating that he was going to shoot any white person in the hallway. Both victims described the handgun as a revolver and were in fear for [their] li[ves].

Finally, although not relied upon by the Government, we have previously held in contexts where hearsay is generally not admissible that "[a] 911 call made within minutes of the event is sufficiently contemporaneous to qualify under either" the excited utterance or present-sense impression hearsay exceptions. *See United States v. Price*, 58 F. App'x 105, 107 (6th Cir. 2003). Such statements are admissible regardless of whether the declarant is available. Fed. R. Evid. 803(1)–(2). "The assumption underlying [the former] exception is that a person under the sway of excitement precipitated by an external event will be bereft of the reflective capacity essential for fabrication, so that any statements made while the excitement lasts will be spontaneous and trustworthy." 1 Weinstein's Evidence Manual § 16.03 (2020) (citing *Navarette v. California*, 572 U.S. 393, 399–400 (2014)). In this case, the district court found the 911 caller's statements to be reliable in part because the callers "were highly excited, highly agitated, and obviously afraid."

Contrary to Bickerstaff's sweeping assertion, we have not held that any hearsay statement "must be corroborated by some extrinsic evidence to be considered sufficiently reliable." Instead, there need only be "'*some* evidentiary basis' to satisfy a 'minimal indicium of reliability.'" *Armstrong*, 920 F.3d at 398 (quoting *Silverman*, 976 F.2d at 1504).

Cases relied upon by Bickerstaff are inapposite. For instance, the statements were not made by a coconspirator, who could possibly have been trying to secure favorable treatment from the police, as in *United States v. Santana*, 723 F. App'x 331 (6th Cir. 2018), a case in which we nonetheless upheld the admissibility of hearsay at sentencing, *id.* at 341.

Bickerstaff's reliance on *United States v. Stephenson*, 928 F.2d 728 (6th Cir. 1991), to argue there is no sufficient corroboration fares no better. In *Stephenson*, we reversed a district court's revocation of supervised release, in part for an assault, based on insufficient evidence. In that case, the defendant's probation officer testified that the defendant had been arrested for assault and the charges were being deferred. *Id.* at 731. While it is true that we observed that Stephenson had not gone to trial for his assault charge, this was in the context of our noting the absence of anything in the record to show that Stephenson's conduct constituted an assault. *Id.* at 732–33. Stephenson testified that he was in an argument and both parties may have done some "pushing," but "[n]o other evidence regarding the assault was offered." *Id.* at 731. We noted that "[n]either Stephenson's step-uncle, the alleged victim, nor the arresting officer submitted letters, affidavits, or testified at the revocation hearing." *Id.* at 732. Unlike the record in *Stephenson*, the record in this case contains the notes from an officer investigating the incident (and his interviews with the victims), the 911 calls, and Bickerstaff's own admission on video that he had the gun in his hand as he was approaching the victims. This record is hardly as devoid of details as the record in *Stephenson* was.

Moreover, Bickerstaff did not need to wave the gun to commit aggravated assault. Bickerstaff offers no supporting authority for his suggestion that "display" in the Tennessee statute requires more than mere visibility. For what it is worth, the dictionary meaning of display is "to put or spread before the view," not wave around or brandish. *Display*, *Merriam-Webster's Collegiate Dictionary* (10th ed. 1997). In interpreting this statute, the Tennessee Court of Criminal Appeals has defined "display" to mean "to show; exhibit; make visible." *State v. Carter*, 681 S.W.2d 587, 589 (Tenn. Crim. App. 1984) (citation omitted).

Finally, Bickerstaff argues that the district court's reliance on the caller's identification of the gun as a revolver provides no support for the visibility of the Bickerstaff's gun because the caller may have had enough previous contact with Bickerstaff to know that his firearm was a revolver, or she may have learned from the police that they had recovered a revolver. That speculation does not show that the 911 caller's statements were insufficiently reliable.

The judgment of the district court is affirmed.